**TRANSCONTINENTAL LEASING, INC., and Hussein Z. Keilani, Plaintiffs-Appellees, Cross-Appellants,**

v.

**MICHIGAN NATIONAL BANK OF DETROIT, Defendant-Appellant, Cross-Appellee.**

Nos. 82–1921, 82–1969 and 83–1225.

United States Court of Appeals, Sixth Circuit.

Argued May 1, 1984.

Decided July 10, 1984.

Opinion on Denial of Rehearing in Nos. 82–1921, 82–1969 Aug. 7, 1984.

Joseph S. Radom (argued), Southfield, Mich., for defendant-appellant, cross-appellee.

Carl J. Marlinga (argued), Southfield, Mich., for plaintiffs-appellees, cross-appellants.

Before JONES and CONTIE, Circuit Judges, and PECK, Senior Circuit Judge.

CONTIE, Circuit Judge.

Michigan National Bank (MNB) appeals from a judgment of the district court holding it liable for the conversion of plaintiffs' stock holdings. Plaintiffs cross-appeal from the district court's subsequent refusal to award treble damages under M.C.L.A. § 600.2919a. We reverse the district court judgment and remand this case for a new trial.

**I.**

Hussein Keilani is the president and sole shareholder of Transcontinental Leasing, Inc. (Transcontinental). In early 1974, Keilani purchased a quantity of stock on margin through two brokerage firms. The brokerage firms held the stock as security for Keilani's loan balance of approximately $95,000. Thereafter, Keilani opened a brokerage account at MNB and later took out a $95,000 loan from MNB to pay off the aforementioned loan balance. He also agreed to transfer his stock portfolio from the brokerage firms to the MNB trust department. The record indicates that Keilani gave MNB his personal note for the

$95,000 loan, but that there was no accompanying security agreement. The Bank did, however, send two letters to Keilani which indicated that Keilani's loan would in fact be secured by his stock holdings.

On December 1, 1975, Transcontinental executed a promissory note in exchange for a $59,000 loan from the Bank. On March 2, 1976, Keilani executed a promissory note for $150,000, which apparently was a renewal of the original $95,000 note. According to Keilani, it was at this time that he discovered that the Bank was holding his stock portfolio as security for his loan obligations. Keilani took the position that he had never consented to such a security agreement. Thereafter, George Dakmak, the Bank's attorney, sent several letters to Keilani and Transcontinental which notified them of several actual or impending defaults.

In May 1976, Keilani and John Ferlisi, the Bank's executive vice-president in charge of lending, met to discuss the loan situation. According to Keilani, he was advised by Ferlisi that if he did not give MNB a security interest in his stock, MNB would freeze all of Transcontinental's commercial accounts. Keilani testified that he reluctantly agreed and that he signed every document placed in front of him, some of which were blank. These documents included a provision to increase Keilani's personal loan from $150,000 to $225,000 and a security agreement which gave the Bank a security interest in Keilani's stock holdings.

Thereafter, the record indicates that Keilani and Transcontinental continued not to make scheduled payments on their respective loan obligations. After one last attempt to consolidate the loans in December 1978, Keilani again defaulted on his loan obligation and the Bank commenced foreclosure proceedings upon Keilani's stock holdings. This lawsuit followed.

Keilani's first complaint alleged that the entire series of loan agreements should be rescinded because of MNB's failure to follow the collateral registration requirements set forth in 12 C.F.R. § 207.1(a), which was promulgated under § 7 of the Securities and Exchange Act of 1934, 15 U.S.C. § 78g. Keilani also sought to enjoin the impending foreclosure sale. This attempt, however, was unsuccessful and the stocks were sold by the Bank. The proceeds from the sale were credited toward Keilani's obligations.

In June 1979, Keilani filed a supplemental complaint in which he requested damages based upon the Bank's failure to comply with 12 C.F.R. § 207.1(a). This complaint also stated various state causes of action such as misrepresentation in Count II, duress in Count IV, and breach of fiduciary duty and conversion in Count VII. At the close of plaintiffs' case, the district court granted defendant's motion to dismiss plaintiffs' federal claim. The court then allowed the case to continue on the state causes of action. Upon submission to the jury, the jury returned a general verdict in favor of plaintiffs in the amount of $176,413.13. The court later denied plaintiffs' motion for treble damages, M.C.L.A. § 600.2919a, and defendant's motion for judgment notwithstanding the verdict. Both parties appeal.

## II.

MNB first contends that the district court did not have pendent jurisdiction to hear the state claims contained in plaintiffs' supplemental complaint. MNB also argues that even if the court had pendent jurisdiction it should have dismissed plaintiffs' state claims as a matter of discretion once the federal claim had been dismissed.

Pendent jurisdiction exists whenever there is a claim " 'arising under [the] Constitution, the Laws of the United States, and Treaties made, or which shall be made, under their Authority ...,' *U.S. Const.*, Art. III, § 2, and the relationship between that claim and the pendent state claim permits the conclusion that the entire action before the court comprises but one constitutional 'case.' " *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966). The three prerequisites for the existence of pendent jurisdiction are (1) the federal claim must have substance sufficient to confer subject matter jurisdiction on the

court; (2) the state and federal claims must derive from a common nucleus of operative fact; and (3) the plaintiff's claims are such that he would ordinarily be expected to try them all in one judicial proceeding. *Id.* The Supreme Court has also indicated, however, that pendent jurisdiction is a doctrine of discretion whose justification lies in "considerations of judicial economy, convenience and fairness to litigants." *Id.* at 726, 86 S.Ct. at 1139. Accordingly, a district court with pendent jurisdiction should normally dismiss state claims without prejudice when "it appears that the state issues substantially predominate, ...." *Id.*

We initially reject MNB's contention that plaintiffs presented no substantial federal claim. The substantiality of a federal claim is measured by the pleadings rather than developments at trial. *Gibbs,* 383 U.S. at 727, 86 S.Ct. at 1139. Upon review of the pleadings, a federal claim should be deemed insubstantial "only if the prior decisions inescapably render the claims frivolous; previous decisions which render claims of doubtful or questionable merit do not render them insubstantial ..." *Hagans v. Lavine,* 415 U.S. 528, 537–38, 94 S.Ct. 1372, 1379, 39 L.Ed.2d 577 (1974).

At the time the supplemental complaint was filed, the law was unclear on whether § 7 of the Securities and Exchange Act conferred onto borrowers a private right of action for damages. It is true that *during* the pre-trial period the Sixth Circuit handed down a decision which held that borrowers had no such private right of action. *See Gilman v. Federal Deposit Insurance Corp.,* 660 F.2d 688, 691 (6th Cir.1981). Nevertheless, the district court correctly considered this intervening case authority as a factor affecting its discretion, and not its power. *See Rosado v. Wyman,* 397 U.S. 397, 403–04, 90 S.Ct. 1207, 1213, 1214, 25 L.Ed.2d 442 (1970). Accordingly, we hold that the plaintiffs did present a substantial federal claim.

We likewise reject MNB's arguments that plaintiffs' federal and state claims do not derive from a common nucleus of oper-

ative fact and that plaintiffs' claims would not ordinarily be tried in one judicial proceeding. Plaintiffs' federal claim arose out of the Bank's failure to prepare and file a Federal Reserve Form U–1 in connection with the initial $95,000 loan. This transaction, however, also commenced the process whereby the Bank acquired Keilani's stock and later sold it when Keilani defaulted on his loan obligations. We believe this underlying factual connection between the state and federal claims is sufficient to satisfy the latter two requirements for pendent jurisdiction as set forth in *Gibbs. Cf. In Re N–500L CASES,* 502 F.Supp. 60, 62 (D.Puerto Rico 1980) (federal claims arising out of airplane crash and state insurance liability claims arose from common nucleus of operative facts).

Finally, we find no abuse of discretion in the district court's decision to hear the pendent state claims after it had dismissed the federal claim. The court's decision to dismiss the federal claim did not occur until the parties and the court had expended substantial time and energy toward the resolution of a dispute that plaintiffs were entitled to bring in a federal court. *Rosado v. Wyman,* 397 U.S. at 404, 90 S.Ct. at 1213. Accordingly, we hold that the district court's decision to hear the pendent state claims was fully justified based upon "considerations of judicial economy, convenience and fairness to litigants." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139.

### III.

Turning to the merits of this appeal, we hold that the district court improperly charged the jury that fear of financial ruin, in and of itself, is a sufficient basis for claiming coercion or economic duress.[1] Under Michigan law, a claimant who relies on a theory of economic duress must also prove a wrongful or unlawful act on the part of the defendant. *See Hackley v. Headley,* 45 Mich. 569, 574, 8 N.W. 511 (1881); *Barnett v. International Tennis Corp.,* 80 Mich.App. 396, 406, 263 N.W.2d 908 (1978).

---

**1.** The district court's instruction on economic duress reads as follows:

Plaintiff claims that his signature on documents affirming the existence of a security agreement in his stock holdings was procured by economic duress or coercion. Duress or coercion need not be accompanied by threats

of physical violence. *Fear of financial ruin is sufficient to be the basis of coercion or duress.*

If you find that Plaintiff's signature on certain documents was procured by coercion or duress, you may regard those documents as having no legal effect.

(Emphasis added).

■ The plaintiffs initially respond that the defendant should be precluded from raising this argument on appeal because it failed to formally object to this charge. *Fed.R.Civ.P.* 51. We disagree. Both parties agree that the defendant registered an objection to the economic duress instruction during a discussion of the proposed instructions in the judge's chambers. In this context, this circuit has held that "Rule 51 ... does not require formal objections, but the Rule is satified only if it is clear that the judge was made aware of the possible error in or omission from the instructions." *Laugesen v. Anaconda Co.,* 510 F.2d 307, 313–14 (6th Cir.1975) (quoting *Gradsky v. Sperry Rand Corp.,* 489 F.2d 502, 503 (6th Cir.1973)). Since the Bank's objection to the economic duress instruction was brought to the attention of the trial judge in timely fashion, we hold that this objection was properly preserved for our review.

■ The plaintiff also argues that "it is clear from the context of the court's jury instructions that unlawful and/or wrongful conduct is necessarily implied as a condition of finding economic duress." The instructions which plaintiffs cite, however, make no mention of economic duress, but rather refer generally to the subjects of "wrongful conversion" or the requirement of "wrongful" or "malicious" conduct for the purpose of awarding exemplary damages. We hold that these instructions simply do not cure the district court's instruction on economic duress, and that a new trial is warranted. In light of our holding, we do not address defendant's remaining arguments that the plaintiffs ratified the loan agreements by their subsequent conduct and that the plaintiffs failed to produce any competent evidence of damages. We also do not address plaintiff's contention that the district court should have awarded treble damages pursuant to *M.C.L.A.* § 600.2919a.

Accordingly, the judgment of the district court is REVERSED and REMANDED for a new trial.

### Order

The plaintiffs-appellees/cross-appellants have filed a petition for rehearing in the above captioned case under Rule 40 of the Federal Rules of Appellate Procedure. They argue that this court erred in holding that Michigan National Bank of Detroit adequately preserved for appellate review an objection to a jury instruction which stated that fear of financial ruin, by itself, is a sufficient basis for claiming coercion or economic duress. Having reviewed the materials submitted by the plaintiffs-appellees/cross-appellants and the transcript of the in-chambers conference of November 2, 1982 concerning jury instructions, this court reaffirms its holding that Michigan National Bank adequately preserved this issue for appellate review.

The Motion for rehearing is DENIED.