802 F.2d 460
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Transcontinental Leasing, Inc.; A Michigan Corporation,
Hussein Z. Keilani, Plaintiffs-Appellees,
v.
MICHIGAN NATIONAL BANK OF DETROIT, A National Banking
Association, Defendant- Appellant.
 No. 85-1236.
 United States Court of Appeals, Sixth Circuit.
 Aug. 22, 1986.
 
 Before KEITH, KRUPANSKY and BOGGS, Circuit Judges.
 PER CURIAM.
 
 
 1
 Defendant-appellant Michigan National Bank of Detroit ("the bank") appealed from a judgment of the district court entered pursuant to a jury verdict of $625,000.00 in favor of plaintiffs-appellees Transcontinental Leasing, Inc. ("Transcontinental") and Hussein Z. Keilani ("Keilani") in this action involving allegations of economic duress and conversion under Michigan law.
 
 
 2
 During the time period relevant to this dispute, Keilani owned and operated a travel agency as a sole proprietorship. Keilani was also the sole stockholder of record in Transcontinental, a leasina company that acquired office furniture, fixtures and equipment and leased those items to Keilani's travel agency.
 
 
 3
 In early 1974, Keilani purchased shares of stock on margin through two brokerage firms. The brokerage firms held the stock as security for Keilani's loan balance of approximately $95,000. Thereafter, Keilani obtained a $95,000 loan from the bank and used the proceeds to satisfy his obligations with the brokerage firms. In addition, Keilani transferred his stock portfolio from the brokerage firms to the bank's trust department. Although Keilani signed a personal note for the $95,000, it was undisputed that no formal security agreement was executed at that time.
 
 
 4
 On March 1, 1976, Transcontinental defaulted on an interest payment due the bank on a $59,500.00 promissory note dated December 1, 1975. On April 9, 1976, the bank notified Keilani that Transcontinental was in default on the $59,500.00 note and demanded full payment of all principal and interest owing to the bank. Keilani testified that in late April or early May of 1976 he was summoned to a meeting at the bank's offices and that the bank's executive vice president, John Ferlisi (Ferlisi) threatened to dishonor all of Keilani's checks issued to the Air Traffic Conference if he did not attend the meeting.[1] Keilani further testified that the threat to dishonor the checks was reasserted when he refused to sign a Security Agreement pledging his stock portfolio as collateral, and that, as a result of the threats, he signed the Security Agreement. He also was requested to sign several other documents to establish a $225,000 line of credit on behalf of Keilani and Traiiscontinental and a $60,000.00 term note on behalf of Transcontinental. Keilani also execuied a written guarantee of Transcontinental's obligations.
 
 
 5
 Thereafter, the parties resumed their banking relationship. However, in November of 1978, representatives of the bank and Keilani conferred to review certain delinquencies which had accrued against his loan obligations. On December 6, 1978, the bank and Keilani entered into an agreement consolidating all of his outstanding notes and delinquent principal and interest payments into a single obligation in the amount of $301,915.24. He immediately thereafter initiated this action.
 
 
 6
 Keilani's original complaint alleged violation of Regulation U, promulgated under the Securities and Exchange Act of 1934, and sought to enjoin foreclosure of the bank's security interest in his stock portfolio. Keilani's motion for a preliminary injunction was denied because of his inability to demonstrate irreparable injury. Shortly after the district court's denial of the preliminary injunction, the Bank sold the stocks in Keilani's portfolio and applied the proceeds against his outstanding obligations.
 
 
 7
 Subsequent to the sale of the stocks in his portfolio, Keilani filed an amended complaint, wherein he charged a violation of Regulation U, as well as various state pendent causes of action, including misrepresentation, duress, breach of fiduciary duty and conversion. The bank denied the material allegations of the amended complaint and filed a counterclaim in which it sought recovery of the remaining unpaid balance of Keilani's indebtedness.
 
 
 8
 At the close of plaintiffs' case, the district court granted the bank's motion to dismiss Keilani's federal claim. However, the district court retained jurisdiction and the trial continued to resolve the pendent state causes of action. At the conclusion of all of the evidence, the court granted defendant's motion for summary judgment and entered judgment for defendant in the amount of $105,621.28, representing balance of principal and interest due and outstanding on Keilani's obligations as of that date. Thereafter, plaintiffs' state claims were submitted to the jury and the jury returned a verdict of $176,413.13 in favor of plaintiffs.
 
 
 9
 The bank appealed from the jury verdict in favor of plaintiffs, arguing that the district court was without pendent jurisdiction to entertain Keilani's state claims and that the jury had been improperly instructed on the issues of coercion and economic duress. This circuit reversed, concluding that the district court had properly exercised its pendent jurisdiction, but that the jury instructions were erroneous. See Transcontinental Leasing v. Michigan National Bank, 738 F.2d 163 (6th Cir.1984).
 
 
 10
 On remand, the case again proceeded to trial on plaintiffs' pendent state claims. As evidence of the damages which resulted from the bank's liquidation of his stock portfolio, Keilani introduced two schedules, prepared by stock brokers, reflecting the highest market price for each share of stock in his portfolio. The first schedule (Exhibit 29) disclosed the highest market price per share of stock that had prevailed between February 1, 1979, the alleged date of conversion, and August 26, 1982, approximately two months before the commencement of the first trial. Based upon Exhibit 29, Keilani's portfolio was valued at $406,652.50. The second schedule (Exhibit 29) was prepared approximately one week before the second trial and valued the portfolio at $800,478.99, based upon the highest price obtainable for each share of Keilani's stock between February of 1979 and November of 1984.
 
 
 11
 The bank did not object to the admissibility or relevance of exhibits 28 and 29 or to the expert testimony of Lewis Rowady, the stockbroker who had prepared exhibit 28. Although Rowady testified that he could provide information as to the highest value that each share of stock in Keilani's portfolio had attained on any given date during 1979 and up to the date of the second trial, the bank elected not to pursue the inquiry.
 
 
 12
 At the close of the evidence, the bank requested that the jury be instructed to return a verdict in its favor. The district court rejected the bank's proposed jury instruction and submitted the case to the jury. Pursuant to a special verdict form, the jury returned a verdict in favor of plaintiffs in the amount of $625,000 in compensatory damages, but refused to award any exemplary damages. The bank filed a motion for judgment notwithstanding the verdict or in the alternative for a new trial which motion was denied by the district court. This appeal followed.
 
 
 13
 On appeal, the bank charged as error the district court's denial of its motion for judgment notwithstanding the verdict. A motion for judgment notwithstanding the verdict will not lie unless it was preceded by a motion for a directed verdict made at the close of all the evidence. Fed.R.Civ.P. 50(b). In the present case, defendant's formal request tliat the jury be instructed to return a verdict in favor of the bank satisfied the procedural requirements to sustain a motion for judgment notwithstanding the verdict. Roberts v. Pierce, 398 F.2d 954, 956 (5th Cir.1968); see also, Quinn v. Southwest Wood Products, Inc., 597 F.2d 1018, 1025 (5th Cir.1979).
 
 
 14
 A motion for judgment notwithstanding the verdict may be granted only if, upon viewing the evidence most favorably to the party opposing the motion, a reasonable trier of fact could draw but one conclusion. An appellate court reviewing the district court's disposition of the motion must apply the same standard of review as the district court. Thus, the judgment below can be reversed only if, after viewing all of the evidence and drawing all reasonable inferences in favor of the plaintiff, this court concludes that the evidence points so strongly in favor of the defendant that reasonable minds could not come to a different conclusion. Ridenour v. Lawson Co., 791 F.2d 52, 55 (6th Cir.1986). See also, Hill v. Spiegel, 708 F.2d --233, 237 (6th Cir.1983); Morelock v. NCR Corp., 586 F.2d 1096, 1104-05 (6th Cir.1978), cert. denied, 441 U.S. 906 (1979).
 
 
 15
 The bank argued that the plaintiffs had not presented sufficient evidence to prevail on their economic duress claim (1) because there was no proof that the bank had committed an unlawful or wrongful act; and (2) because plaintiffs had waived their right to complain about economic duress when they accepted 0 accommodations from the bank. The bank further argued that, as a matter of law, plaintiffs could not have prevailed on their conversion claim (1) because the bank's liquidation of the securities did not constitute conversion; and (2) because plaintiffs failed to establish any basis for an award of damages under Michigan law.
 
 
 16
 However, based upon the evidence in the record, the jury could reasonably have concluded that Keilani signed the Security Agreement under duress resulting from the bank's threats to dishonor his checks and that the liquidation of his stock portfolio constituted a conversion of his property. Moreover, plaintiffs presented sufficient evidence to sustain the damage award returned by the jury.
 
 
 17
 The bank also assigned as error the district court's denial of its motion for a new trial. The bank charged that a new trial should have been granted because (1) the district court failed to define the terms "wrongful or unlawful act"; (2) the district court erred in instructing the jury that documents signed under duress had no legal effect; and (3) the district court failed to instruct the jury that Keilani's financial condition could not be considered in determining what constituted a "reasonable time" for repurchase of the stock following the alleged conversion.
 
 
 18
 The authority to grant a new trial rests within the sound discretion of the trial court. Allied Chemical Cor p. v. Daiflon, 449 U.S. 33, 36, 101 S.Ct. 188, 191, 66 L.Ed.2d 193 (1980). A review of the record in the case at bar disclosed that the bank failed to object to the district court's instructions on the duress cause of action and that the bank did not present its argument relating to the conversion cause of action in its motion for new trial in the district court. Accordingly, this court cannot conclude that the district court abused its discretion in refusing to grant a new trial.
 
 
 19
 For the reasons stated above, the judgment of the district court is hereby AFFIRMED.