David PITCHFORD, Plaintiff,

v.

GENERAL MOTORS CORPORATION, Defendant.

No. 1:01–CV–814.

United States District Court,
W.D. Michigan,
Southern Division.

Jan. 22, 2003.

676

David M. Clark, Clark, Chip & Barger, L.L.P., Okemos, MI, for Plaintiff.

David M. Davis, Hardy, Lewis & Page, P.C., Birmingham, MI, for Defendant.

## OPINION

QUIST, District Judge.

Before the Court is Defendant, General Motors Corporation's ("GM"), Motion for Summary Judgment on Plaintiff, David Pitchford's ("Pitchford"), Complaint alleging (1) breach of contract; (2) promissory estoppel; (3) conversion; and (4) ratification. The Court will dismiss with prejudice Pitchford's breach of contract, promissory estoppel, and ratification claims. Pitchford's conversion claim, however, will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

### Facts

Pitchford was hired by GM on September 9, 1963, and continued to work for GM until his March 6, 1999, suspension for allegedly misappropriating GM's property, which was changed to a dismissal for cause on March 26, 1999. On March 6, 1999, Pitchford filed an Employee Grievance with GM, stating that his suspension was an "unjust penalty." (Employee Grievance, Def.'s Br. Supp. Mot. Summ. J. Ex. C.) GM initially denied Pitchford's Employee Grievance. (Id.) On July 9, 1999, Pitchford pleaded guilty to one count of Embezzlement over $1,000.00 but less than $20,000.00 under M.C.L. 750.174(4)(a). (Plea Agreement, Def.'s Br. Supp. Mot. Summ. J. Ex. E.) Pitchford was sentenced to two weeks in jail, plus costs, fines, restitution, and supervision. (Id.) Following Pitchford's guilty plea, GM and the United Auto Workers ("UAW") resolved Pitchford's Employee Grievance on July 15, 1999, by agreeing that, "The claimant was properly discharged for theft of Company property." (Grievance Settlement, Def.'s Br. Supp. Mot. Summ. J. Ex. G.) Pitchford

did not claim ineffective representation by his union.

Pitchford worked as an hourly employee and participated in the GM Pension Plan at all times during his employment. The GM Pension Plan is governed by the Employee Retirement Income Security Act of 1974 ("ERISA") 29 U.S.C. § 1001. The 1996 Supplemental Agreement Covering Pension Plan was in effect at the time Pitchford commenced retirement, and it governs Pitchford's entitlement to benefits. The GM Pension Plan provides a monthly Basic Benefit calculated by multiplying years of credited service by a basic benefit rate, as well as early retirement benefits for qualified participants. Article II, § 2 of the GM Pension Plan allows participants who complete thirty or more years of credited service to "retire at the option of the employee." (GM Pension Plan, Art. II, § 2, Def.'s Br. Supp. Mot. Summ. J. Ex. J.) Additionally, Article II, § 6 provides for the payment of an Early Retirement Supplement (Social Security make-up benefit) to a participant who has completed thirty or more years of service and who was *not discharged for cause.* (GM Pension Plan, Art. II, § 6, *Id.*) Section K of Appendix D to the Supplemental Agreement Covering Pension Plan sets forth the appeal procedure for: "Any employee who disputes a determination with respect to such employee's ... (iii) computation of pension benefits or supplements under the Pension Plan." (GM Pension Plan, App. D, § K, Def.'s Reply Br. Ex. B.)

Prior to his discharge for cause, but during the term of his suspension, Pitchford applied for retirement benefits under the GM Pension Plan, including the Early Retirement Supplement. Pitchford's Authorization of Monthly Benefits form was completed and signed on March 19, 1999, and Pitchford's benefits commenced on April 1, 1999. (Application to Retire, Def.'s Br. Supp. Mot. Summ. J. Ex. H.) On March 26, 1999, GM completed its investigation of Pitchford's alleged theft and advised Pitchford that his suspension was being changed to a discharge for cause. (GM Letter to Pitchford of March 26, 1999, Def.'s Br. Supp. Mot. Summ. J. Ex. D.)

On March 31, 1999, GM advised the Pension Administration Center that Pitchford had been discharged for cause and that Pitchford was not entitled to the Early Retirement Supplement. (CMS Transaction, Def.'s Br. Supp. Mot. Summ. J. Ex. I at 1.) Pitchford's change in benefit eligibility, however, was not entered into the Pension Administration Center's computer records until June 15, 1999. (*Id.* at 2.) Thus, from April 1, 1999, through June 15, 1999, Pitchford, received benefit checks consisting of both the Basic Hourly Pension benefit of $807.03 and an Early Retirement Supplement of $1,416.17. On June 15, 1999, Pitchford received a letter from GM stating that he was not eligible to receive the Early Retirement Supplement and that his subsequent Basic Hourly Pension benefit checks would be reduced over the next seven months until GM recovered its overpayment. Pitchford did not appeal this benefit reduction pursuant to the appeals procedure set forth in Section K of Appendix D to the Supplemental Agreement Covering Pension Plan.

Pitchford also claims that GM converted his tools. Pitchford asserts that following his discharge he attempted, through his union, to recover his personally-owned tools, which he had left in a locked toolbox at his former workplace. Pitchford states that the union was of no assistance in recovering his tools and that he did not attempt to contact GM directly. At some point after Pitchford's dismissal, GM employee Brian Smith ("Smith") cut the lock off of Pitchford's toolbox to gain access to one of the Pitchford's tools. It is unclear whether this action was authorized by

Smith's GM supervisor. After removing the lock, Smith failed to resecure Pitchford's toolbox. All of Pitchford's tools eventually disappeared.

Pitchford filed suit on October 10, 2001, in the Ingham County Circuit Court alleging: (1) breach of contract; (2) promissory estoppel; (3) conversion; and (4) ratification. On December 17, 2001, GM removed the case to this Court.

## Discussion

■ Pitchford has asserted three common law claims based on GM's denial of his early retirement supplement. Pitchford's state common law claims for breach of contract and ratification are preempted by Section 502 of ERISA. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 62–63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (stating that "common law contract and tort claim are pre-empted by ERISA"). Thus, Pitchford's breach of contract and ratification claims will be dismissed.[1]

■ Pitchford's promissory estoppel claim will also be dismissed. While the Sixth Circuit recognized in *Sprague v. General Motors Corp.*, 133 F.3d 388, 403–04 (6th Cir.1998), that "equitable estoppel may be a viable theory in ERISA cases," it subsequently clarified in *Bielkie v. General Motors Corp.*, 188 F.3d 506, 1999 WL 644336, at *2 (6th Cir.1999), that *Sprague's* "holding is limited to welfare plans."[2] Since Pitchford's promissory estoppel claim is based on a denial of pension plan benefits, the Court will not convert it into an actionable equitable estoppel ERISA claim.

■ Having determined that Pitchford's federal ERISA claims should be dismissed, the Court finds it appropriate to dismiss Pitchford's remaining state law claim for conversion pursuant to 28 U.S.C. § 1367(c). "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir.1996) (citing *Transcon. Leasing, Inc. v. Mich. Nat'l Bank of Detroit*, 738 F.2d 163, 166 (6th Cir.1984)). In deciding whether to exercise its supplemental jurisdiction, "[a] district court should consider the interests of judicial economy and the avoidance of multiplicity of litigation and

---

1. Even if Pitchford properly brought his claims under ERISA, which he did not, his ERISA claims would nonetheless not be actionable because Pitchford has failed to exhaust his administrative remedies under Section K of Appendix D to the Supplemental Agreement Covering the GM Pension Plan. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 986 (6th Cir.1991) ("The administrative scheme of ERISA requires a participant to exhaust his or her administrative remedies prior to commencing suit in federal court."); *see also Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 454 (6th Cir.1991) (per curiam) ("[T]he exhaustion requirement enables plan fiduciaries to 'efficiently manage their funds; correct their errors; interpret plan provisions; and assemble a factual record which will assist a court in reviewing the fiduciaries' actions.' ") (quoting *Makar v. Health Care Corp. of Mid-Atlantic*, 872 F.2d 80, 83 (4th Cir.1989)); *Ravencraft v. UNUM Life Ins. Co. of Am.*, 212 F.3d 341, 343 (6th Cir.2000) (stating that the exhaustion requirement "is the law in most circuits despite the fact that ERISA does not explicitly command exhaustion"). The Court also finds that Pitchford does not meet any of the exceptions to the exhaustion requirement, including futility of the administrative process and inadequacy of the administrative remedy. *Baxter*, 941 F.2d at 453 (citing *Springer v. Wal-Mart Assoc. Group Health Plan*, 908 F.2d 897, 899 (11th Cir.1990)). Pitchford's properly brought ERISA claims would thus have been dismissed without prejudice. *Ravencraft*, 212 F.3d at 344 (holding that dismissal without prejudice is proper when dismissing an action solely for failure to exhaust administrative remedies).

2. The Court finds the *Bielkie* court's reasoning persuasive and discerns no reason to depart from its holding, even though *Bielkie* is not controlling authority.

balance those interests against needlessly deciding state law issues." *Landefeld v. Marion Gen. Hosp., Inc.*, 994 F.2d 1178, 1182 (6th Cir.1993) (affirming district court's order granting summary judgment on federal claim and dismissing state law claims without prejudice). "When all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims, or remanding them to state court if the action was removed." *Musson*, 89 F.3d at 1254–55 (citing *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n. 7, 108 S.Ct. 614, 619 n. 7, 98 L.Ed.2d 720 (1988)).

The Court finds that the balance of considerations in this case weighs against the Court exercising its supplemental jurisdiction. There are no significant issues of judicial economy because the case is not so far advanced that litigation in a different court would result in a duplication or waste of judicial resources. Therefore, the Court will dismiss Pitchford's state law conversion claim without reaching its merits.

### Conclusion

For the foregoing reasons, Pitchford's breach of contract, promissory estoppel, and ratification claims will be dismissed with prejudice. Pitchford's conversion claim will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c).

An Order consistent with this Opinion will be entered.