**MUSSON THEATRICAL, INC., and Modernage Photo Service, Inc., for themselves and all others similarly situated, Plaintiffs–Appellants,**

v.

**FEDERAL EXPRESS CORPORATION, Defendant–Appellee.**

No. 95–5120.

United States Court of Appeals, Sixth Circuit.

Argued March 11, 1996.

Decided July 19, 1996.

that Kentucky May agrees to recognize the Union and bargain in good faith must be eliminated.

Cornish F. Hitchcock (argued), Public Citizen Litigation Group, Washington, DC, William L. Gibbons, Evans & Petree, Memphis, TN, Lisa M. Mezzetti (briefed), Herbert E. Milstein, Cyrus Mehri (briefed), Cohen, Milstein, Hausfeld & Toll, Washington, DC, Alan R. Markizon, Coeur D'Alene, ID, David J. Guin, Hogan, Smith & Alspaugh, Birmingham, AL, for Musson Theatrical, Inc., Modernage Photo Service, Inc.

Earle J. Schwarz, Waring Cox, Memphis, TN, Clifford P. Johnson, Federal Express Corp., Memphis, TN, Lee Ann Huntington, Robert B. Mullen (briefed), Eliot S. Jubelirer (argued), Morgenstein & Jubelirer, San Francisco, CA, for Federal Express Corp.

Before: JONES, BOGGS, and BATCHELDER, Circuit Judges.

BOGGS, Circuit Judge.

The plaintiffs ("Musson") appeal the dismissal of federal common law claims of fraud and misrepresentation against Federal Express. Musson also appeals the district court's ruling that state common law claims against Federal Express, pending in a simultaneous state court proceeding, are preempted by the Airline Deregulation Act of 1978. We affirm the district court's dismissal of Musson's federal claims for lack of subject matter jurisdiction, but vacate its ruling concerning Musson's state law claims and direct that the district court dismiss these claims without prejudice.

I

Musson claims that it purchased "FedEx Economy Two–Day Service" rather than "Standard Overnight Service" because Federal Express represented that the former was cheaper. In fact, says Musson, "Standard Overnight Service" is cheaper, and Musson ended up paying a higher price for slower delivery. Musson filed a complaint in the district court alleging that these facts

entitle it to damages for "common law fraud" and "negligent misrepresentation."

Musson did not try to find a basis for federal subject matter jurisdiction in the extensive statutory scheme that regulates the rates and advertising practices of air carriers. In fact, Musson conceded that there is no express or implied right of action against an air carrier for deceptive advertising under the relevant statutes. Musson Brief at 7. *Accord Statland v. American Airlines,* 998 F.2d 539 (7th Cir.1993) (no private right of action for deceptive advertising action against airline under the Airline Deregulation Act of 1978). Instead, Musson pled subject matter jurisdiction under "the federal common law." Musson Brief at 7. Federal Express filed a motion to dismiss under Fed. R.Civ.P. 12(b)(1) for lack of subject matter jurisdiction, and under Rule 12(b)(6) for failure to state a claim. The district court held that the federal common law does not contain a right of action for fraud against an air carrier, and dismissed Musson's federal claims under Rule 12(b)(1) for lack of subject matter jurisdiction.

## II

We must first decide, reviewing *de novo,* if the dismissal of Musson's claims under Rule 12(b)(1) was proper. Musson contends that the court should have dismissed its claims, if at all, under 12(b)(6) for failure to state a claim upon which relief can be granted. Musson argues that a federal court always has jurisdiction to decide if a claim exists under federal common law and, if such a claim exists, a federal court certainly has jurisdiction over it. *See Illinois v. City of Milwaukee,* 406 U.S. 91, 100, 92 S.Ct. 1385, 1391, 31 L.Ed.2d 712 (1972) (federal question jurisdiction exists for claims under federal common law).

When a 12(b)(1) motion attacks the face of a complaint, the plaintiff's burden to prove federal question subject matter jurisdiction is not onerous. *RMI Titanium Co. v. Westinghouse Elec. Corp.,* 78 F.3d 1125, 1134 (6th Cir.1996) (discussing 12(b)(1) motions that attack jurisdictional facts, the standard of review of such motions, and when they should be converted to motions for summary judgment). The plaintiff must show only that the complaint alleges a claim under federal law, and that the claim is "substantial." A federal claim is substantial unless " 'prior decisions inescapably render [it] frivolous.' " *Transcontinental Leasing, Inc. v. Michigan National Bank of Detroit,* 738 F.2d 163, 165 (6th Cir.1984).[1] In short, when faced with a 12(b)(1) challenge to the face of a complaint, the plaintiff can survive the motion by showing any arguable basis in law for the claim made.

In the present case, Musson's argument is novel, but not frivolous. No case has ever recognized a federal common law action for fraud against an air carrier. However, the law is hardly static—and a federal court has jurisdiction to hear claims on the margins of reasonable possibility. Federal courts have created other common law rules to regulate the relationship between air carriers and their customers, as discussed below. Furthermore, Musson argues that a cause of action is necessary because of the relatively new preemption provision of the Airline Deregulation Act of 1978. An accurate understanding of the meaning of this preemption provision requires careful analysis. For these reasons, the dismissal of Musson's federal common law claim for lack of federal question jurisdiction on the face of the complaint was an error. We caution that a litigant cannot achieve federal jurisdiction merely by writing "federal common law" on a complaint—but in this case Musson offers reasoned arguments why a cause of action

---

**1.** We choose to equate "substantial" with non-frivolous because other definitions of substantial are circular. *E.g. Hagans v. Lavine,* 415 U.S. 528, 542–43, 94 S.Ct. 1372, 1382, 39 L.Ed.2d 577 (1974) ("the test is whether the cause of action alleged is so patently without merit as to justify ... the court's dismissal for want of jurisdiction.") (internal citations omitted); *Oneida Indian Nation v. County of Oneida,* 414 U.S. 661,

666, 94 S.Ct. 772, 777, 39 L.Ed.2d 73 (1974) (test is whether right claimed is "so insubstantial, implausible, foreclosed by prior decisions of this Court, or otherwise completely devoid of merit as not to involve a federal controversy."). This precedent does little more than say that dismissal is appropriate when the claim is so weak as to make dismissal appropriate.

should exist, and these arguments warrant a careful response. As the Supreme Court has held, a non-frivolous claim "confers power to decide that it has no merit, as well as to decide that it has." *Montana–Dakota Utils. Co. v. Northwestern Pub. Serv. Co.,* 341 U.S. 246, 249, 71 S.Ct. 692, 694, 95 L.Ed. 912 (1951).

### III

■ As it does not make any difference to the outcome of this case, we shall construe the district court's dismissal of Musson's federal claims as a dismissal under Rule 12(b)(6) for failure to state a claim upon which relief can be granted.[2] We review *de novo* a district court's dismissal under 12(b)(6). *Wright v. MetroHealth Medical Ctr.,* 58 F.3d 1130, 1138 (6th Cir.1995). The only dispute is whether a shipper that alleges it was injured by the fraud and deceptive advertising of an air carrier states a claim under federal common law.

The usual source of authority for federal common law rules governing a suit between private parties is a federal statute. The plaintiffs, however, concede that the relevant statutory framework provides no cause of action. Another source of authority is the Constitution. *E.g., Bivens v. Six Unknown Federal Narcotics Agents,* 403 U.S. 388, 91 S.Ct. 1999, 29 L.Ed.2d 619 (1971). The plaintiffs, however, have not argued that the logic of our Constitutional structure requires the federal right of action they seek.

■ Sometimes federal courts have created federal common law to govern a suit between private parties without explicit reference to either a statute or the Constitution. In these cases, however, the federal common law rule has been necessary to "protect a uniquely federal interest." *Texas Indus., Inc. v. Radcliff Materials, Inc.,* 451 U.S. 630, 640, 101 S.Ct. 2061, 2067, 68 L.Ed.2d 500 (1981) (earlier sources omitted). We have held that the authority to create a federal common law rule without reference to a statute or the Constitution exists only "in such narrow areas as those concerned with the rights and obligations of the United States, interstate or international disputes implicating the conflicting rights of the States or relations with foreign nations, and admiralty cases." *Smith v. Dearborn Financial Servs., Inc.,* 982 F.2d 976, 981 (6th Cir.1993). *See Banco Nacional de Cuba v. Sabbatino,* 376 U.S. 398, 84 S.Ct. 923, 11 L.Ed.2d 804 (1964) (applying "act of state" doctrine to Cuban nationalization of industry); *Clearfield Trust Co. v. United States,* 318 U.S. 363, 63 S.Ct. 573, 87 L.Ed. 838 (1943) (duty of United States in regard to commercial paper issued by it).

Musson contends that we should create a federal common law action here because "[c]arrier-shipper relations, the topic of this case, [are] one such enclave where there is a body of federal common law that controls the respective liabilities of interstate air carriers and shippers." Musson Brief at 17. In one respect, Musson is correct. There are a variety of federal common law rules that govern certain aspects of the relationship between shippers and air carriers. For example, a federal common law rule allows air carriers to limit by contract their liability for losses, *Hampton v. Federal Express Corp.,* 917 F.2d 1119, 1121 (8th Cir.1990), and a federal common law rule determines carrier liability to persons travelling on a free pass, *Thompson v. National R.R. Passenger Corp.,* 621 F.2d 814, 819–20 (6th Cir.), *cert. denied,* 449 U.S. 1035, 101 S.Ct. 611, 66 L.Ed.2d 497 (1980). These cases indicate that there is some federal interest in uniform rules regulating the pricing practices of air carriers. Assuming that this federal interest is substantial *enough,* a federal court could create a federal common law rule (even an entirely new federal common law cause of action) to serve these articulated federal interests without violating principles of federalism.[3] *Cf.*

---

**2.** Of course, a 12(b)(6) dismissal, as opposed to a dismissal under 12(b)(1), may constitute a resolution of Musson's claims on the merits. The possible preclusive effect of this change in nomenclature does not worry us because that preclusive effect could obviously not extend to the state law claims that we, later in this opinion, order dismissed on jurisdictional grounds without prejudice.

**3.** However, the federal interest would have to be rather extraordinary to warrant the creation of an entire cause of action. All the cases cited by

*Wallis v. Pan American Petroleum Corp.*, 384 U.S. 63, 68, 86 S.Ct. 1301, 1304, 16 L.Ed.2d 369 (1966) (federal common law should supplement or replace state common law only when there is a "significant conflict" between the state law and federal policy).

██ What Musson misses, however, is that it is not the role of federal courts to articulate federal interests—but to enforce the federal interests identified by Congress. When a federal court creates a federal common law rule, it risks violating *both* of the two fundamental limits on the judicial branch: federalism and the separation of powers. Musson might convince us that it would not offend federalism for us to draft a federal cause of action for deceptive advertising. However, Musson must also convince us that such a holding would be consistent with our limited role in the federal government. Here, Musson fails.

Prior to 1938, this country relied on common law doctrines of contract and tort to regulate the rates and advertising practices of air carriers. "Common law" at this point meant *either* federal or state commercial common law, depending on the court in which an action was brought. *Cf. Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938) (ending "general" federal common law). In 1938, Congress passed the Civil Aeronautics Act, 52 Stat. 973, which set up a system of tariffs for air carriers. The Act contained a savings clause stating that nothing in the Act would "in any way abridge or alter the remedies now existing at common law or by statute, but the provisions of this chapter are in addition to such remedies." 49 U.S.C.App. § 1506. As a result, certain *state* common law actions remained possible throughout the period when the Civil Aeronautics Act was operative. Musson, however, has failed to present one example of a *federal* common law cause of action against air carriers during this period. We do not find this absence of precedent surprising in light of the teaching of *Erie.*

In 1958, Congress passed the Federal Aviation Act (FAA), 72 Stat. 731, 49 U.S.C.App. § 1301 *et seq.* (1988 ed. and Supp. V). The Act set up a comprehensive federal regulatory scheme governing air carriers. Part of this scheme allowed consumers to bring complaints about deceptive advertising to the Civil Aeronautics Board, which had the power to bring a variety of enforcement actions. Like the Civil Aeronautics Act before it, the FAA had a savings clause that preserved some state common law actions. 49 U.S.C.App. § 1506 ("A remedy under this part is in addition to any other remedies provided by law."). Because of the savings clause, a party could sue an airline for fraud under state common law, despite the ability to petition the Civil Aeronautics Board for an administrative remedy. *Nader v. Allegheny Airlines,* 426 U.S. 290, 96 S.Ct. 1978, 48 L.Ed.2d 643 (1976). Also because of the savings clause, courts applied federal common law rules concerning liability limits in cases under state law. *Klicker v. Northwest Airlines, Inc.,* 563 F.2d 1310, 1314 (9th Cir. 1977) (striking air carrier's contractual limit on liability for loss of live animal in transport). Again, Musson has failed to cite a single case suggesting a federal common law cause of action against air carriers during this period.

In 1978, Congress passed the Airline Deregulation Act (ADA), 92 Stat. 1705. The ADA eliminated the authority of the Civil Aeronautics Board. Subsequent legislation, however, transferred the Board's authority to protect consumers against deceptive advertising practices to the Department of Transportation. CAB Sunset Act of 1984, Pub.L. No. 98–443, 98 Stat. 11706 (1984). *See also* H.R.Conf.Rep. No. 793, 98th Cong., 2d Sess. (1978), *reprinted in* 1984 U.S.C.C.A.N. 2857, 2860 (explaining rationale for change). Currently, any person may file a complaint with the Department of Transportation, and the Department of Transportation, in its discretion, can prosecute actions against carriers for "unfair and deceptive practices." 49 U.S.C. § 41712. Although

---

Musson concern the use of federal law in a state law cause of action. An occasional rule—usually a defense—is far less intrusive as a matter of federalism than the creation of a cause of action.

The latter both changes the substantive law applicable between private citizens *and* provides a basis for federal question jurisdiction in federal courts.

DOT cannot award a complaining party "damages," *Pinehurst Airlines, Inc. v. Resort Air Servs., Inc.,* 476 F.Supp. 543, 548 (M.D.N.C.1979), it can seek civil penalties of up to $1,000 per violation, 49 U.S.C. §§ 1155, 46301. *See also American Airlines, Inc. v. Wolens,* —— U.S. ——, ——, 115 S.Ct. 817, 823 n.4, 130 L.Ed.2d 715 (1995) (noting that DOT assessed more than $1.8 million in civil penalties in aviation enforcement proceedings in 1993).

Like the FAA before it, the ADA contains a savings clause. 49 U.S.C. § 40120(c) ("A remedy under this part is in addition to any other remedies provided by law."). Unlike the FAA, however, the ADA also contains an express preemption provision, recently recodified at 49 U.S.C. § 41713(b)(4)(A) ("[A] state ... may not enact or enforce any law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier...."). Interpreting this provision, the Supreme Court has held that the ADA preempts state law fraud claims, but not state law contract claims. *American Airlines,* —— U.S. at ——, 115 S.Ct. at 823–24. Again, Musson has failed to cite a single case since 1978 that suggests a federal common law cause of action for fraud against air carriers.

Of course, the simple lack of precedent during any of these periods is not fatal to Musson's claim. If Congress, by adopting and re-adopting the savings clause, clearly expressed an intent that courts create a federal cause of action for fraud, then we would not fail to create that cause of action simply because a particular set of circumstances has not yet occurred. However, there is not a shred of evidence that Congress, when passing any of the three statutes described above, intended the statutory scheme to exist side-by-side with a federal cause of action for air carrier fraud. In fact, the legislative history of the CAB Sunset Act "establishes that DOT, not private parties, will enforce consumer protection rules against airlines." *Statland,* 998 F.2d at 541. Without a specific congressional instruction to the courts, Musson's argument essentially becomes a plea that we hold that the three successive savings clauses overrule *Erie* (at least as it is

applicable to air freight), resurrecting the federal courts' ability to decide cases according to their own ideas about appropriate commercial law principles. Here Musson encounters two obstacles: (i) the same lack of Congressional intent; and (ii) the *constitutional* tenor of *Erie's* mandate to refrain from avoidable judicial lawmaking. 304 U.S. at 77–78, 58 S.Ct. at 822.

Moreover, the Supreme Court has expressly rejected the possibility that the ADA leaves room for a federal common law cause of action against air carriers, at least in regard to breach of contract claims: "Nor is it plausible that Congress meant to channel into federal courts the business of resolving, pursuant to judicially fashioned federal common law, the range of contract claims relating to airlines rates, routes, or services." *American Airlines,* —— U.S. at ——, 115 S.Ct. at 825. Musson argues that this statement is not important because it deals with contract claims rather than fraud claims. It makes sense, says Musson, to hold that there is no federal common law action for breach of contract because such actions can be brought under state law. It does not make sense, however, to hold that there is no federal common law action for fraud, because state law fraud claims are clearly preempted, and a plaintiff would be left with no recourse.

■ We do not agree. State law fraud claims are preempted because Congress intended DOT to be the sole legal control on possible advertising fraud by air carriers, and a federal common law fraud claim is inappropriate for the same reason. *See American Airlines,* —— U.S. at ——, 115 S.Ct. at 823 (describing "the ADA's purpose to leave largely to the airlines themselves ... the selection and design of marketing mechanisms appropriate to the furnishing of air transportation services"). *Accord Statland,* 998 F.2d at 541; *Vail v. Pan Am Corp.,* 260 N.J.Super. 292, 616 A.2d 523, 527 (1992); *Howard v. Northwest Airlines, Inc.,* 793 F.Supp. 129, 132 (S.D.Tex.1992). Broadly reading the Supreme Court's statement in *American Airlines,* we therefore hold that the ADA, unlike ERISA, does not "channel civil actions into federal courts," —— U.S. at

——, 115 S.Ct. at 825, whether those actions allege breach of contract or fraud.

There is an additional problem with what Musson now asks this court to do. In *Cort v. Ash,* 422 U.S. 66, 78, 95 S.Ct. 2080, 2087–88, 45 L.Ed.2d 26 (1975), and its many progeny, the Supreme Court developed a test for when a private right of action can be implied from the text or scheme of a federal statute. Every court faced with the question of whether a consumerprotection provision of the ADA allows the implication of a private right of action against an airline has answered the question in the negative. *Statland,* 998 F.2d at 539 (49 U.S.C. § 1381(b)); *Montauk–Caribbean Airways, Inc. v. Hope,* 784 F.2d 91, 97 (2d Cir.), *cert. denied,* 479 U.S. 872, 107 S.Ct. 248, 93 L.Ed.2d 172 (1986) (49 U.S.C. § 1349); *Polansky v. Trans World Airlines, Inc.,* 523 F.2d 332, 338–40 (3rd Cir.1975) (49 U.S.C. § 1381(a)). Essentially, Musson asks us to ignore *Cort v. Ash* and imply a cause of action for violation of an obligation expressed in a federal statute according to the more flexible law about when and how a court can create miscellaneous federal common law rules. We refuse to do so. The existence of a general savings clause in a federal statute does not license a court to create a federal cause of action when the plaintiff cannot meet the normal requirements of *Cort v. Ash. Cf. Transamerica Mortgage Advisors, Inc. v. Lewis,* 444 U.S. 11, 23, 100 S.Ct. 242, 249, 62 L.Ed.2d 146 (1979) (the "dispositive question remains whether Congress intended to create any such remedy"); *Statland,* 998 F.2d at 540 (Plaintiff "cannot bootstrap consumers' rights into a law that does not mention them"). In light of evidence that Congress intended Musson to have no federal civil remedy, we will not use the savings clause to create such a remedy under the rubric of "federal common law."

## IV

On the same day that Musson filed its federal complaint, Musson also filed a complaint alleging violations of state law in the Chancery Court of Shelby County, Tennessee. Federal Express asked the federal district court to declare that these state claims were preempted by federal law. Although *none of these claims had been pled in federal court,* the district court exercised jurisdiction over them "[i]n order to conserve judicial resources." Order, November 17, 1994, at 8. The court ordered that "since the plaintiffs' state law claims relate to rates and services, those claims are preempted pursuant to the Airline Deregulation Act, 49 U.S.C. § 1305(a)(1)." Order at 12.

We hold that the district court erred in resolving Musson's state law claims. Regardless of "judicial resources" or the pleas of the parties before it, a federal court must proceed with caution in deciding that it has subject matter jurisdiction. *Healy v. Ratta,* 292 U.S. 263, 270, 54 S.Ct. 700, 703, 78 L.Ed. 1248 (1934). The Constitution allows federal courts only a limited and special jurisdiction, and powers not given to the federal courts by Congress are reserved to the primary repositories of American judicial power: state courts. *Gross v. Hougland,* 712 F.2d 1034, 1036 (6th Cir.1983) (citing *Owen Equip. and Erection Co. v. Kroger,* 437 U.S. 365, 372, 98 S.Ct. 2396, 2401–02, 57 L.Ed.2d 274 (1978)). The constitutional primacy of state court jurisdiction does not change merely because a dispute touches on issues of federal law. *Gully v. First National Bank,* 299 U.S. 109, 112, 57 S.Ct. 96, 97, 81 L.Ed. 70 (1936); *Louisville & Nashville R. Co. v. Mottley,* 211 U.S. 149, 152, 29 S.Ct. 42, 43, 53 L.Ed. 126 (1908). For federal jurisdiction to exist, unless citizenship is diverse, a plaintiff's well-pleaded complaint must raise an issue "arising under" the laws of the United States; the presence of a federal *defense* is inadequate. *Franchise Tax Board of Cal. v. Construction Laborers Vacation Trust for Southern Cal.,* 463 U.S. 1, 9–12, 103 S.Ct. 2841, 2846–48, 77 L.Ed.2d 420 (1983). The question of preemption at issue in this case is merely another federal defense. *Metropolitan Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987). We must assume that a state court, subject to review by writ of certiorari, can resolve such a defense as ably as could a federal district court.

Reviewing the record in this case, we find no acceptable basis for subject matter juris-

diction. The district court's opinion obliquely mentions two possibilities: that the state claims were "completely preempted," and that the state claims were impliedly pled and properly pendent. We can accept neither theory.

## V

In the middle of its opinion, the district court implies that Musson's state law claims were "completely preempted" by the ADA's preemption provision, 49 U.S.C. § 1305. The district court writes: "Inasmuch as § 1305 applies, there is exhibited a congressional intent to treat plaintiffs' complaint as 'federal in character' by its very nature invoking subject matter jurisdiction." Order at 11. The district court then cites *Metropolitan Life*, 481 U.S. at 63–64, 107 S.Ct. at 1546–47, a case in which the Supreme Court applied the "complete preemption" exception to the well-pleaded complaint rule. *Id.*, 481 U.S. at 63–67, 107 S.Ct. at 1546–48 (ERISA gives federal courts jurisdiction to decide preemption defense to certain state law claims). *See also Avco Corp. v. Aero Lodge No. 735*, 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968) (LMRA gives federal courts jurisdiction to decide preemption defense to certain state law claims).

If we read the district court's reference to "complete preemption" doctrine as a holding that the ADA completely preempts Musson's state law claims and confers jurisdiction on the federal courts to hear them, that holding is erroneous and must be set aside. "Complete preemption" applies only in the *extraordinary* circumstance when Congress intends, not merely to preempt a certain amount of state law, but also to transfer jurisdiction to decide the preemption question from state to federal courts. *See Metropolitan Life*, 481 U.S. at 65–66, 107 S.Ct. at 1547–48 (finding a statement of such intent in the legislative history). Without evidence of Congress's intent to transfer jurisdiction to federal courts, there is no basis for invoking federal judicial power. *Strong v. Telectronics Pacing Systems, Inc.*, 78 F.3d 256, 259 (6th Cir.1996).

Examining the text of the ADA and its legislative history, we see no evidence that Congress intended the federal courts to have exclusive subject matter jurisdiction over the preemption defenses to state law claims against air carriers. Quite to the contrary: if the Supreme Court was correct to state that the ADA, unlike ERISA, did not intend to "channel actions into federal court," *American Airlines*, —— U.S. at ——, 115 S.Ct. at 825, then *only* a state court, or a federal court sitting in diversity, is an appropriate forum for resolution of Musson's claims.

## VI

The district court's opinion also implies that it had jurisdiction over Musson's state law claims under the doctrine of supplemental jurisdiction, now partly codified at 28 U.S.C. § 1367. The obvious problem with the exercise of supplemental jurisdiction over Musson's state law claims is that *Musson never pled these claims in the district court.* The complaint merely asserts rights "under the common law." One might read this as encompassing both federal and state law claims were it not for a footnote in the complaint informing the court that:

> The Plaintiffs in this action, on this day, have filed a complaint under state law in the Chancery Court of Shelby County Tennessee (Tenth Chancery Division at Memphis) to protect their interests and those of the proposed Class should it be decided that this cause of action should be filed under state and not Federal law.

Complaint at 2 n.1. At oral argument, both the defendant and the plaintiff told this court that state law claims were "impliedly" pled (without citing a source in the complaint for such an implication), and that supplemental jurisdiction was proper for this reason. We disagree. Modern pleading rules may be lax, but they still require that a party plead a claim before the court decides it. Furthermore, Fed.R.Civ.P. 8 requires the complaint to contain "a short and plain statement of the grounds upon which the court's jurisdiction depends." At a minimum, this requires a plaintiff to identify state claims as such, or to

cite the supplemental jurisdiction rule at 28 U.S.C. § 1367.

Fed.R.Civ.P. 15 allows easy and liberal amendment of the complaint to encompass additional claims. We might find appellate correction of the district court's error unnecessary because the district court could rectify its own mistake on remand by accepting an amendment to the complaint that adds the state law claims. *See Carney v. Resolution Trust Corp.,* 19 F.3d 950, 954 (5th Cir.1994) (citing 3 James W. Moore et al., Moore's Federal Practice 15–154 (2d ed. 1993) (an amendment that changes the jurisdictional basis of an action will relate back to the date of the original complaint if the factual situation alleged otherwise remains unaltered); 6A Charles A. Wright, Arthur R. Miller, Mary Kay Kane, Federal Practice and Procedure § 1497, at 80 (2d ed. 1990) ("Amendments curing a defective statement of subject matter jurisdiction ... will relate back.")).

■ However, there is a second problem with the district court's assertion of supplemental jurisdiction over the unpled state law claims. On the particular facts of this case, it was an abuse of discretion to retain the state law claims on a theory of supplemental jurisdiction after dismissal of the federal claims upon which supplemental jurisdiction depended.

*United Mine Workers v. Gibbs,* 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966) established the doctrine of supplemental jurisdiction as a matter of federal common law. Essentially, *Gibbs* held that a federal court can decide a state law claim that forms part of the same "case or controversy" as a claim over which the court has jurisdiction. *Ibid.* Since *Gibbs,* federal courts have expanded and shaped the doctrine of supplemental jurisdiction by applying it to new circumstances. In 1990, Congress passed a supplemental jurisdiction statute, now codified at 28 U.S.C. § 1367. Although § 1367 overruled *Finley v. United States,* 490 U.S. 545, 109 S.Ct. 2003, 104 L.Ed.2d 593 (1989) (restrictions on jurisdiction over third parties), the statute affirmed *Gibbs,* as interpreted by subsequent federal courts, as the proper measure of federal supplemental jurisdiction. 28 U.S.C.A. § 1367, Practice Commentary at 829 (1993). *See Purgess v. Sharrock,* 33 F.3d 134, 139 (2d Cir.1994) ("Section 1367(c) is consistent with earlier case law on this subject...."); *Timm v. Mead Corp.,* 32 F.3d 273, 276 (7th Cir.1994) ("Section 1367 was 'intended to codify rather than to alter the judge-made principles of pendent and pendent party jurisdiction.'") (citing *Brazinski v. Amoco Petroleum Additives Co.,* 6 F.3d 1176, 1182 (7th Cir.1993)).

■ A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims. *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank of Detroit,* 738 F.2d 163, 166 (6th Cir. 1984). That discretion, however, is bounded by constitutional and prudential limits on the use of federal judicial power. *Gibbs* itself expressed one of the most important of these limits: "Certainly, if the federal claims are dismissed before trial, even though [the federal claims are] not insubstantial in a jurisdictional sense, the state claims should be dismissed as well." *Gibbs,* 383 U.S. at 726, 86 S.Ct. at 1139.

The word "certainly" was effectively erased by *Rosado v. Wyman,* 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). There the Court held that a district court did not abuse its discretion in retaining jurisdiction over supplemental state law claims after it dismissed the touchstone federal claim for mootness before trial. 397 U.S. at 405, 90 S.Ct. at 1214. *Rosado* held that there is no categorical rule that the pretrial dismissal of a federal claim bars a court from deciding remaining state law claims. *Ibid.* Instead, the decision depends on "judicial economy, convenience, fairness, and comity." *Carnegie–Mellon Univ. v. Cohill,* 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988). This approach was codified at 28 U.S.C. § 1367(c)(3), which provides that a district court "may" (rather than must) decline to exercise jurisdiction if "the district court has dismissed all claims over which it has original jurisdiction."

■ As a rule of thumb, however, the *Gibbs* dictum remains valid. When all federal claims are dismissed before trial, the balance of considerations usually will point to

dismissing the state law claims, or remanding them to state court if the action was removed. *Carnegie–Mellon*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7. *Accord Wright v. Associated Ins. Cos., Inc.*, 29 F.3d 1244, 1251 (7th Cir.1994); *Purgess v. Sharrock*, 33 F.3d at 138; *Timm v. Mead Corp.*, 32 F.3d at 276. This court has consistently applied *Gibbs*'s amended dictum. *Taylor v. First of America Bank–Wayne*, 973 F.2d 1284, 1287 (6th Cir. 1992) ("when 'all federal claims are eliminated before trial, the balance of factors ... will point toward declining to exercise jurisdiction....' " (citing *Carnegie–Mellon*, 484 U.S. at 350 n. 7, 108 S.Ct. at 619 n. 7)); *Aschinger v. Columbus Showcase Co.*, 934 F.2d 1402, 1412 (6th Cir.1991) (only "overwhelming interests in judicial economy may allow a district court to properly exercise its discretion and decide a pendent state claim even if the federal claim has been dismissed before trial."); *Gaff v. Federal Deposit Ins. Corp.*, 814 F.2d 311, 319 (6th Cir.1987) ("It is generally recognized that where, as in this case, federal issues are dismissed before trial, district courts should decline to exercise pendent jurisdiction over state law claims.").

■ A close look at precedent indicates that not all "pretrial dismissals" affect supplemental claims in the same manner. The vast majority of pretrial dismissals, such as a dismissal on a motion for summary judgment, do not affect the trial court's ability to resolve supplemental claims. But there are two types of pretrial dismissals that appellate courts have scrutinized closely. The first is a dismissal under Rule 12(b)(1). If the court dismisses plaintiff's federal claims pursuant to Rule 12(b)(1), then supplemental jurisdiction can *never* exist. A Rule 12(b)(1) dismissal postulates that there never was a valid federal claim. Exercise of jurisdiction on a theory of supplemental jurisdiction would therefore violate Article III of the Constitution, because the original federal claim would not have "substance sufficient to confer subject matter jurisdiction on the court." *Gibbs*, 383 U.S. at 725, 86 S.Ct. at 1138. *See also Bigelow v. Michigan Dep't of Natural Resources*, 970 F.2d 154, 159 (6th Cir.1992) (dismissal for lack of ripeness equivalent to dismissal for lack of subject matter jurisdiction; state law claims cease to be properly

supplemental). Obviously, a district court has no discretion to exceed the scope of its Article III power.

■ The second type of problematic pretrial dismissal is a dismissal under Rule 12(b)(6) for failure to state a claim. After a 12(b)(6) dismissal, there is a strong presumption in favor of dismissing supplemental claims. *Taylor*, 973 F.2d at 1287 (dictum); *Vild v. Visconsi*, 956 F.2d 560, 570 (6th Cir. 1992) (dictum); *Aschinger*, 934 F.2d at 1412 (dictum); *Gaff*, 814 F.2d at 319 (reversing district court's decision to exercise supplemental jurisdiction over state claim after federal claim dismissed under 12(b)(6)). There are two reasons for this presumption. First, a 12(b)(6) dismissal usually comes early in the proceedings, when the court has not yet invested a great deal of time into resolution of the state claims. Second, a 12(b)(6) dismissal implies that the substance of the federal claims was somehow lacking, even if the claims were sufficient to survive a motion for dismissal under 12(b)(1). *Aschinger*, 934 F.2d at 1412 (dictum) ("[w]hen a case is dismissed for failure to state a federal claim, as in [*Gaff*], the federal claim does not have substance sufficient to confer subject matter jurisdiction [over a supplemental state claim] in federal court.").

■ The presumption that a 12(b)(6) dismissal of the touchstone claims precludes the exercise of supplemental jurisdiction over any remaining claims can be overcome in "unusual circumstances." *Gaff*, 814 F.2d at 318. The Second Circuit has suggested that these "unusual circumstances" must include "some prejudice arising from relegating the case for trial in the state court." *Nolan v. Meyer*, 520 F.2d 1276, 1280 (2d Cir.1975). *See Purgess v. Sharrock*, 33 F.3d 134, 139 (12(b)(6) dismissal on the eve of trial allows supplemental jurisdiction over pendent claims because "[t]he parties and the court had spent years preparing").

We are convinced that no "unusual circumstances" were present in this case, and that the district court's decision to resolve the plaintiff's state law claims was an abuse of its discretion under § 1367. First, the resolution of this entire action in the district court

took less than six months—and obviously would have taken less time if the parties and court had addressed only the "federal common law" claims pled. Second, the court held no hearing, but conducted the proceeding purely on written motions. These same written materials could be submitted to a state judge for his decision, with only minimal rewriting. Third, neither party made any allegation that a minor delay, or state court resolution of the issue, would cause them any special problem.

Fourth, the preemption defense to the state claims and the "federal common law" claims are conceptually distinct, and resolution of one issue does not affect resolution of the other. Fifth, this is not a case where the federal court had exclusive jurisdiction over the federal claim. Musson could have brought its original action in state court, which, frankly, would have been a far more appropriate forum.

Sixth, the preemption issue is not so clear as to render the state law claims "patently frivolous." *Wright*, 29 F.3d at 1251. The Supreme Court's recent opinion in *American Airlines* does hold that general state law fraud claims are preempted, but it also holds that a party can recover "for the airline's alleged breach of its own, self-imposed undertakings." —— U.S. at ——, 115 S.Ct. at 824. Since the plaintiffs never informed the court of the particular state law theory on which they seek to recover, it is unclear if the ADA preempts the "state law claims." The entire record and collection of briefs before us does not cite a single state law case or statute. In fact, we do not even, at this point, know *which* law in *which* state Musson thinks Federal Express violated.

Seventh, although we have held above that the district court could not dismiss Musson's claim as insubstantial under 12(b)(1), Musson's claim is *close* to insubstantial. In fact, the district court seems to have believed it to be, as the court's dismissal for lack of subject matter jurisdiction suggests. As we noted above, when a federal claim is dismissed as insubstantial, the Constitution absolutely for-

bids a district court from exercising supplemental jurisdiction over any remaining state claim.

Eighth, a state action was already pending in Shelby County, Tennessee. We find this fact extremely compelling. On the one hand, it is evidence of the ease with which these matters could have been relinquished to the control of the Tennessee state court. On the other hand, the existence of a contemporaneous state action suggests the appropriateness of discretionary judicial abstention to avoid interfering in a state court proceeding. We certainly do not believe that the present case meets the rigorous test for *Colorado River* abstention. *See Arizona v. San Carlos Apache Tribe of Arizona*, 463 U.S. 545, 103 S.Ct. 3201, 77 L.Ed.2d 837 (1983); *Moses H. Cone Memorial Hosp. v. Mercury Constr. Co.*, 460 U.S. 1, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 96 S.Ct. 1236, 47 L.Ed.2d 483 (1976). However, the insult to comity is greater when a federal court decides state claims that are already on a state court's docket.[4]

Ninth, we must return to the simple fact that the state law claims were never actually pled. The most that we could do now would be to remand the case so that the parties and court could comply with the minimal requirements of federal notice pleading. Once the state claims are properly before it, the district court would have to make another decision about whether supplemental jurisdiction was proper, weighing the relative advantage of resolution in federal and state court. At this point, the federal claims would have been dismissed for several months. Furthermore, the district court's initial resolution of the preemption issue, decided before the Court's decision in *American Airlines* and without any idea as to the particular state law on which Musson based its claim, would likely have to be re-examined in light of new information. Given the ability of a state court judge to read a record, we cannot imagine that the district court could conclude that its own familiarity with this complicated, but not

---

4. The record does not indicate if the state court proceedings have been stayed pending resolution of Musson's federal case.

*that* complicated, case constitutes "unusual circumstances" and justifies federal resolution of Musson's state law claims.

The only factor that suggests "unusual circumstances" in this case is the fact that the preemption issue is a question of federal law. The Court in *Gibbs* held that this was a relevant consideration, even while recognizing that a preemption defense does not create general federal jurisdiction. 383 U.S. at 726, 86 S.Ct. at 1139 ("[A]rgument for exercise of pendent jurisdiction is particularly strong" in "situations in which the state claim is so closely tied to questions of federal policy...."). Given the general respect for a state court's ability to decide federal issues, this consideration is clearly outweighed by the other factors at work in this case.

### VII

For the reasons described above, the district court's dismissal of Musson's federal claims is AFFIRMED, and the district court's resolution of Musson's state law claims is VACATED. The case is REMANDED and the district court instructed to dismiss Musson's state claims, to the extent that they are before the court, without prejudice.