Ruby J. WEBER, Plaintiff,

v.

CONTEMPO COLOURS, INC., a Michigan corporation, Contempo Colours Holding Company, Inc., a Michigan corporation, Nicholas A. Clementi, Midmark Venture Capital Group, North American Venture Capital, Joseph Robinson, Fred Rohn, and American Greetings Corporation, an Ohio corporation, jointly and severally, Defendants.

No. 4:00–CV–02.

United States District Court, W.D. Michigan, Southern Division.

July 7, 2000.

Alan H. Silverman, Stephen M. Rice, Silverman, Smith & Bingen, PC, Kalamazoo, for Ruby J. Weber, pltfs.

Pamela Chapman Enslen, Scott R. Sikkenga, Miller, Canfield, Paddock & Stone, Kalamazoo, MI, for Contempo Colours Inc, Contempo Colours Holding Company, Inc., Nicholas A. Clementi, Midmark Venture Capital Group, North American Venture Capital, Joseph Robinson, Fred Rohn, American Greetings Corporation, defts.

## *OPINION*

QUIST, District Judge.

Plaintiff, Ruby J. Weber ("Plaintiff"), sued Defendants for breach of contract (constructive discharge), federal securities fraud, breach of fiduciary duty, fraudulent misrepresentation, fraudulent concealment, oppression of a minority shareholder, breach of contract (bad faith) and conspiracy. The sole basis for this Court's jurisdiction is Count II, the alleged federal securities law claim. 15 U.S.C. § 78aa. There is no diversity of citizenship jurisdiction. The matter is now before the Court on Defendants' motion to dismiss all counts for failure to state a claim upon which relief can be granted.

### *Facts* [1]

Plaintiff was the President of Defendant Contempo Colours, Inc. ("Contempo"). Plaintiff owned 5,250 shares of stock in Defendant Contempo Colours Holding Company, Inc. ("Contempo Holding"), which owned all shares of Contempo. Plaintiff's shares were subject to a Stock Redemption Agreement ("SRA") which required Plaintiff to sell her stock to Contempo Holding at book value upon termination of her employment. During the time at issue, Defendants Joseph Robinson ("Robinson") and Fred Rohn ("Rohn") were directors of Contempo Holding. Defendant Nicholas A. Clementi ("Clementi") was a director of Contempo Holding and Chief Executive Officer ("CEO") of both Contempo and Contempo Holding. Defendants Clementi, Midmark Venture Capital Group, and North American Venture Capi-

---

[1]. These are the "facts" as gleaned from Plaintiff's Complaint and Brief in Response To Defendants' Motion to Dismiss Pursuant to Fed.R.Civ.P. 12(b)(6).

tal were, collectively, majority shareholders of Contempo Holding.

During 1998, it appeared to Plaintiff that Clementi was having an inappropriate personal relationship with a part-time Contempo employee ("CE"). Clementi and Contempo promoted CE to Director of Finance, Chief Financial Officer, Senior Vice–President, and Chief Operating Officer, of Contempo, and consequently raised CE's salary. These promotions usurped the business relationship between Clementi, as CEO, and Plaintiff, as President. Plaintiff found the relationship between Clementi and CE offensive and unprofessional. Because the relationship between Clementi and CE made her working conditions intolerable, Plaintiff tendered her resignation on April 15, 1999, to become effective May 31, 1999.

Plaintiff claims in her brief in response to Defendants' motion to dismiss that on or about April 19, 1999, after Plaintiff had already tendered her resignation, in the Contempo offices near a water cooler, Clementi, acting on behalf of Contempo and Contempo Holding, and while trying to dissuade Plaintiff from resigning, told Plaintiff that her stock would not be worth more than its book value of $3.33 per share until 2001 or 2002. This alleged representation was in conjunction with another alleged representation that Contempo would not be sold until at least 2001 or 2002. There is also a claim in the brief that on May 4, 1991, Clementi informed Plaintiff that her employment should terminate on May 7, 1999, instead of May 31, 1999. This acceleration was contrary to Contempo's usual practice of delaying stock repurchases until after the effective date of resignation. Plaintiff alleges that during April and May 1999, Clementi took numerous calls from American Greetings President, Ed Fruchtenbaum.

Plaintiff terminated her employment on May 31, 1999. Pursuant to the SRA, her stock was purchased by Contempo Holding for $3.33 per share. Some weeks or months later (Plaintiff says a few weeks; Defendants say August 1999), Contempo or Contempo Holding was sold to American Greetings for $129.00 per share.

Plaintiff claims, among other things, that she was of a victim of federal securities fraud because Defendants willfully failed to inform her in April 1999 that a sale or possible sale to American Greetings was pending. Plaintiff claims that this misrepresentation or omission violates the Securities Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5 (1999). (*See* Compl. ¶ 39.)

### *Discussion*

### 1. Analysis of Securities Fraud Claim

There are five principal elements in a claim brought under § 10(b) the Securities Exchange Act of 1934 ("Securities Act") and Rule 10b–5: (1) a misrepresentation or omission; (2) of a material fact; (3) made with scienter; (4) justifiably relied on by the plaintiff; and (5) proximately causing the plaintiff's injury. *See Aschinger v. Columbus Showcase Co.,* 934 F.2d 1402, 1409 (6th Cir.1991). "Scienter" is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 193 n. 12, 96 S.Ct. 1375, 1381 n. 12, 47 L.Ed.2d 668 (1976). The Sixth Circuit has held with reference to a 10b–5 claim that scienter includes the concept of recklessness. *See Hoffman v. Comshare, Inc. (In re Comshare Inc. Sec. Litig.),* 183 F.3d 542, 551 (6th Cir.1999); *Auslender v. Energy Management. Corp.,* 832 F.2d 354, 356 (6th Cir.1987). In addition, in order to recover under § 10(b) of the Securities Act and Rule 10b–5, a plaintiff must show reliance on the defendant's misstatement or omission. *Basic, Inc. v. Levinson,* 485 U.S. 224, 243, 108 S.Ct. 978, 989, 99 L.Ed.2d 194 (1988); *Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.,* 511 U.S. 164, 180, 114 S.Ct. 1439, 1449, 128 L.Ed.2d 119 (1994). Thus, in order to state a claim for federal securities fraud, Plaintiff must allege that Defendants had an intent to deceive her in April 1999, when she tendered her resignation,

thereby triggering the SRA. In this case, there could be no scienter or intent to deceive unless Defendants knew in April 1999 that a sale or possible sale to American Greetings was pending.

Fed.R.Civ.P. 9(b) requires that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." In 1995, Congress determined that the heightened pleading requirements of Rule 9(b) were not effectively deterring abuses of the securities laws by private litigants. *See Comshare*, 183 F.3d at 548. Thus, Congress sought to address this problem by amending the Securities Act through passage of Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u–4(b)(1998). Among other things, the PSLRA changed the level of pleading that a plaintiff must meet with regard to the scienter requirement in order to survive a Rule 12(b)(6) motion to dismiss. *See Comshare*, 183 F.3d at 550–52. The (PSLRA) states, in part:

**Requirements for securities fraud actions:**

(1) Misleading statements and omissions. In any private action arising under this title in which the plaintiff alleges that the defendant—

(A) made an untrue statement of a material fact; or

(B) omitted to state a material fact necessary in order to make the statements made, in the light of circumstances in which they were made, not misleading;

the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed.

(2) Required state of mind. In any private action arising under this chapter in which the plaintiff may recover money damages only on proof that the defendant acted with a particular state of mind, the complaint shall, with respect to each act or omission alleged to violate this chapter, state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.

15 U.S.C. § 78u–4(b)(1) and (2).

Defendants argue that Plaintiff's federal securities fraud allegations do not meet the heightened requirements of either the Fed.R.Civ.P. 9(b) or the PSLRA. (*See* Defs.' Br. Supp. at 11–16.) Plaintiff argues that she has pled fraud with sufficient particularity. In her brief, however, Plaintiff admits that specific fraudulent statements, who made the statements, and where and when the statements were made "is not directly stated, it is clearly implied." (Pl.'s Resp. Br. at 14.)

The PSLRA was passed to prevent "strike suits" against corporations by trying to assure to the extent possible that a plaintiff had a good faith basis for alleging fraud against a corporation or its officers and directors. *See* S.Rep. No. 104–98, at 10 (1995), *reprinted in* 1995 U.S.C.C.A.N. 679, 689. Where a plaintiff files federal securities law claims against multiple defendants, the court is obliged to go through the complaint allegation by allegation in order to determine if claims are specifically alleged against each named defendant. *See Picard Chem. Inc. Profit Sharing Plan v. Perrigo Co.*, 940 F.Supp. 1101, 1117 (W.D.Mich.1996), and cases cited therein. The PSLRA does not lessen this burden upon plaintiffs. Even in her briefs in response to Defendants' motions, Plaintiff does not describe what specific statements were made by any defendant other than the April 1999 statements by Clementi. Nor does Plaintiff allege any knowledge by any individual defendant. Therefore, all individual Defendants other than Clementi must be dismissed from Count II because Plaintiff failed to allege that they made any statement whatsoever, let alone any misleading statement meeting the high requirements of the PSLRA.

■ In analyzing whether Plaintiff has sufficiently alleged fraud under Rule 9(b) and the PSLRA against Clementi and, vicariously, Contempo and Contempo Holding, this Court has considered Plaintiff's allegations as elaborated in Plaintiff's briefs. Plaintiff states that Clementi made a statement alleged to be misleading (the April 19, 1999 statement),,but fails "with respect to" this statement to "state with particularity facts giving rise to a strong inference that [Clementi] acted with the required state of mind." All that is alleged in the Complaint is a *conclusion* that Clementi knew that Contempo or Contempo Holding would be sold to American Greetings. Plaintiff simply says that she *"believes"* that the statement was made at a time when Clementi intended to sell Contempo or Contempo Holding to American Greetings, but no rationale or details for Plaintiff's belief are given. (Pl.'s Resp. Br. at 14.)

■ Of course, Plaintiff's subjective beliefs do not suffice. Rather, as stated, Plaintiff must allege:

> *sufficient facts* to establish [ ] (1) the falsity or the misleading characteristics of the defendants' statements [and], (2) a strong inference that the defendants had the state of mind required by the statute.

*Helwig v. Vencor, Inc.,* 210 F.3d 612, 620 (6th Cir.2000)(emphasis added). Furthermore, in the Sixth Circuit, allegations of motive and opportunity to commit fraud are not enough to satisfy the requirements of the PSLRA. *See Comshare,* 183 F.3d at 551.

This Court finds that the Complaint does not allege fraud against Clementi, Contempo and Contempo Holding with sufficient facts to meet the requirements of the PSLRA. There is nothing at all in the Complaint or Plaintiff's briefs other than the fact that the sale of Contempo occurred some time after Plaintiff allegedly suffered a constructive discharge. This argument does not support a rational or logical conclusion that Clementi knew that the sale was going to occur when he made the April 19, 1999, statement. The sale might show a motive to lie in April 19, 1999, but it does not give rise to a "strong inference" that in April 1999, Clementi had any knowledge that a sale to American Greetings would or even might occur.

In fact, far from "giving rise to a strong inference that defendant acted with the required state of mind," the Complaint and Plaintiff's briefs give rise to the opposite inference. To believe that on April 19, 1999, Clementi was aware of a pending or even possible sale to American Greetings defies common sense. The timing is not right.

Plaintiff claims that she was so upset regarding the collateral consequences of Clementi's affair with CE that she tendered her resignation on *April 15, 1999,* four days before the alleged statement on *April 19, 1999.* The resignation was effective May 31, 1999. The resignation triggered the mandatory buy-sell between Plaintiff and Contempo Holding (*see* SRA ¶ 5), and established the price for those shares—essentially book value but not less than Plaintiff's cost (*see id.* ¶ 6). The stock sale would be closed "as promptly as possible but in no event later than sixty (60) days after the date of . . . termination of employment . . ." (*Id.* ¶ 7). Thus, Plaintiff cannot argue that any representation made to her about the value of the shares or about future prospects for the company, nor any omission about any of these matters, caused Plaintiff to tender her resignation—the event that triggered her obligation to sell her stock at book value.

Plaintiff seeks to avoid this obvious timing problem by arguing that her resignation was not effective until May 31, 1999, and that during the April 19, 1999, conversation,

> Plaintiff and [ ] Clementi discussed her resignation and the possibility of her reconsidering the decision. She told him that the value of the stock was one factor she would consider in making her final decision. Clementi told Plaintiff that the Stock would not be worth more

than its book value of $3.33 per share until "2001 or 2002." On May 4, 1999, Clementi told Plaintiff that her employment with Contempo should conclude on *May 7, 1999* instead of *May 31, 1999.* Despite the effective date of Plaintiff's termination being May 31, 1999, Clementi accelerated the Stock repurchase to May 4, 1999. This was contrary to the firm's general practice of delaying stock repurchases until after the effective date of resignation.

(Pl.'s Br. Resp. Def's. Reply at 2–3.)

Assuming the quoted statement is true, it is directly opposed to any logical conclusion that on April 19, 1999, Clementi had any knowledge that a sale to American Greetings was probable or even possible:

- If Clementi wanted to purchase Plaintiff's shares for book value pursuant to the SPA knowing that a sale for $129.00 per share was possible or probable, he would not have tried to dissuade Plaintiff from resigning, thereby relieving Plaintiff of her obligation to sell her stock. Rather, he would have accepted Plaintiff's resignation, with joy, immediately.
- If Clementi knew that the company would soon be sold, he would not have needed to keep Plaintiff as president.

Apparently, because of this April 19, 1999, conversation, Plaintiff did not withdraw her resignation, thereby keeping in effect her agreement to sell at book value. The alleged telephone calls between Clementi and Ed Fruchtenbaum in April and May 1999, are not claimed to have occurred at any time prior to any representation by Clementi to Plaintiff, and Plaintiff was allegedly notified of the acceleration of her termination and the stock repurchase on May 4, 1999. The May 4 notification, coming as it does *after* Clementi tried to get Plaintiff to remain at Contempo on April 19, 1999, does not lead to any "strong inference" that Clementi had knowledge and acted with scienter on April 19, when he tried to get Plaintiff to stay. Finally, the fact that Plaintiff remained an employee until May 31, 1999, does not give rise to even a remote inference of any fraud between the time that Plaintiff tendered her resignation, April 15, 1999, and the time her employment officially terminated, May 31, 1999. Once Plaintiff tendered her resignation, the Plaintiff's duty to sell her stock at book value and Contempo Holding's duty to buy at book value were set. After April 19, 1999, nothing Plaintiff could do could change that fact. Even if Plaintiff had desired to reinstate her employment sometime in May 1999, Contempo and Contempo Holding had no duty whatsoever to reinstate her. Therefore, there could be no material omission or reliance during this period of time.

## 2. Amendment

Pursuant to the Federal Rules of Civil Procedure, leave to amend a complaint "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). However, leave should not be granted "if the amendment is brought in bad faith, for dilatory purposes, results in undue delay or prejudice to the opposing party, or would be futile." *Crawford v. Roane,* 53 F.3d 750, 753 (6th Cir.1995); *see also Foman v. Davis,* 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962). Ordinarily, this Court might allow Plaintiff to amend her Complaint to properly allege fraud under the PSLRA. In this case, however, amendment would not be appropriate for the following reasons:

(a) In analyzing whether Plaintiff stated a claim for federal securities·fraud, this Court considered the allegations in the Complaint as supplemented by the arguments in Plaintiff's briefs. Plaintiff has not shown this Court how she would amend her Complaint to cure any defect. As stated, this Court has already considered all of the claims found in Plaintiff's briefs and found the federal securities violations lacking. This Court concludes that Plaintiff simply has nothing which would cure the deficiencies pointed out in this

Opinion. Therefore, amendment would be futile.

(b) The PSLRA states:

In any private action arising under this title, the court *shall,* on the motion of any defendant, *dismiss* the complaint if the requirements of paragraphs (1) and (2) are not met.

15 U.S.C. § 78u–4(b)(3)(emphasis added). Thus, the clear language of the Act requires dismissal. To permit further discovery in order to help Plaintiff discover if there is a possible federal securities act violation lurking somewhere would also violate the policy of the PSLRA to terminate speculative federal securities violation claims quickly.

### 3. State Law Claims

This Court having dismissed the sole claim over which it has jurisdiction, and no significant discovery or other procedures having occurred before this Court, this Court will exercise its discretion to dismiss supplemental state law claims pursuant to 28 U.S.C. § 1367(c)(3). "A district court has broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims." *Musson Theatrical, Inc. v. Federal Express Corp.,* 89 F.3d 1244, 1254 (6th Cir.1996)(citing *Transcontinental Leasing, Inc. v. Michigan Nat'l Bank,* 738 F.2d 163, 166 (6th Cir.1984)). Further, the Sixth Circuit has said that "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson,* 89 F.3d at 1254–55. Thus, given the status of this case, the Court will dismiss the state law claims without prejudice.

### Conclusion

For the foregoing reasons, the Court will grant Defendants' Rule 12(b)(6) motion to dismiss with regard to Count II of the Complaint. The state law claims will be dismissed without prejudice pursuant to 28 U.S.C. § 1367(c)(3).

An Order consistent with this opinion will be entered.

### ORDER

In accordance with the Opinion filed on this date,

**IT IS HEREBY ORDERED** that Defendants' Motion To Dismiss (docket no. 15) is **GRANTED IN PART.** Count II of this case is hereby **dismissed with prejudice.** The remaining counts are **dismissed without prejudice** pursuant to 28 U.S.C. § 1367(c)(3).

### ORDER

The parties are hereby ordered to file briefs with this Court on whether this Court must make the findings set forth in 15 U.S.C. § 78u–4(c), *and* each party's position on the amount of such sanctions should such sanctions be ordered. Such briefs shall be filed within fourteen (14) days of this Order.