Iris STATLAND, Plaintiff–Appellant,

v.

AMERICAN AIRLINES, INC.,
Defendant–Appellee.

No. 92–2062.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 16, 1993.

Decided July 16, 1993.

Arthur T. Susman, Terry Rose Saunders (argued), Terrence Buehler, Susman, Saunders & Buehler, Chicago, IL, for plaintiff-appellant.

Ronald L. Marmer (argued), Jerold S. Solovy, James L. Thompson, Jenner & Block, Chicago, IL, for defendant-appellee.

Before CUMMINGS and COFFEY, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

CUMMINGS, Circuit Judge.

In this appeal we consider two issues important to federal regulation of the airline industry: whether Section 411(b) of the Federal Aviation Act, 49 U.S.C.App. § 1381(b), creates a private right of action for airline ticket purchasers, and whether federal law preempts state actions that challenge an airline's ticket refund policies.

The underlying facts are simple: Iris Statland bought an American Airlines ticket with a 10 percent cancellation penalty. When she canceled it American kept 10 percent of the federal tax she paid, or $1.25, in addition to 10 percent of the ticket price. Statland claims that the ticket she bought violated Department of Transportation (DOT) regulations because it did not incorporate any contract provision that allowed American to keep 10 percent of the tax once she canceled her ticket. She sued American in district court to recover her $1.25—as well as similar refunds on behalf of thousands of consumers. Statland brought one claim under Section 411(b) of the Federal Aviation Act and four supplemental state law claims. 28 U.S.C. § 1367. To proceed in a federal court, Statland must show that Section 411(b) creates a private right of action for consumers, since that is the sole basis for federal jurisdiction in her suit. She also must show that her state law claims are not preempted by federal law under *Morales v. Trans World Airlines, Inc.*, —— U.S. ——, 112 S.Ct. 2031, 119 L.Ed.2d 157. We hold that Section 411(b)

does not create a private right of action and that federal law preempts Statland's state law claims.

Implied private right of action cases arise where a statute and its legislative history say nothing about private actions to enforce its provisions. One party then argues that the statute's purpose would be frustrated without a private right to sue; since Congress does not vitiate its laws except by oversight, the party urges the court to complete Congress' intent by reading a private right to sue into the statute. *Thompson v. Thompson,* 484 U.S. 174, 179, 108 S.Ct. 513, 516, 98 L.Ed.2d 512; *Saltzman v. Farm Credit Services,* 950 F.2d 466, 467–468 (7th Cir.1991). Of late, courts seldom imply a private right of action where none appears in the statute, for "a strong presumption exists against [their] creation * * *." *West Allis Memorial Hospital, Inc. v. Bowen,* 852 F.2d 251, 254 (7th Cir.1988).

■ This Court has several maxims that guide us through murky implied cause of action problems. One of these dictates that a private cause of action is seldom implied for statutes framed as general commands to a federal agency or for statutes that do not create rights for a specific class of persons. *City of Evanston v. Regional Transportation Authority,* 825 F.2d 1121, 1123 (7th Cir. 1987). This maxim furnishes a shorthand way to describe statutes where private actions are almost never required to effect Congress' intent. It is extremely unlikely that Congress' intent to confer power on a federal agency would be thwarted without a private right to sue. Similarly, because private suits usually seek to enforce personal rights, a private cause of action seldom augments a law that does not create rights for a specific class of persons. *California v. Sierra Club,* 451 U.S. 287, 297–298, 101 S.Ct. 1775, 1781, 68 L.Ed.2d 101.

■ Analysis of congressional intent begins with the Aviation Act provision at issue, which states:

Any air carrier may incorporate by reference in any ticket * * * any of the terms of the contract of carriage in interstate and overseas air transportation, to the extent such incorporation by reference is in accordance with regulations issued by the Board.

49 U.S.C.App. § 1381(b). This section allows an airline to engage in certain ticketing practices so long as it complies with federal regulations. The statute describes an agency's power to regulate otherwise legal activity, and it does not purport to create rights for any group of people. Section 411(b) is thus in that category of laws where an implied private right of action seldom furthers Congress' intent. *City of Evanston,* 825 F.2d at 1123.

Statland argues that Congress intended Section 411(b) to grant airline ticket purchasers the right to receive tickets that conform to DOT regulations on incorporation by reference. Of course if one asks who benefits when a business follows the law, the answer is often "consumers of its product." But if this were enough to infer Congress' intent to give those consumers a private cause of action, then every law regulating a business would give its customers an implied private right to sue. This is not the law. *Sierra Club,* 451 U.S. at 293–294, 101 S.Ct. at 1778–1779. Section 411(b) requires airlines to follow regulations; it tells us nothing about whether Congress intended those regulations to be enforced by DOT or by private parties. Statland cannot bootstrap consumers' rights into a law that does not mention them. *Community and Economic Development Assoc. v. Suburban Cook County Area Agency on Aging,* 770 F.2d 662, 664–665 (7th Cir.1985).

Section 411(b)'s position within the Aviation Act also shows that implying a private right of action here would not give effect to Congress' intent. In the original Aviation Act, Section 411 appeared as a single paragraph giving the Civil Aeronautics Board (CAB) authority to regulate deceptive practices or unfair methods of competition in the airline industry. Pub.L. No. 85–726, 72 Stat. 731 (1958). In 1978, the Airline Deregulation Act effected a wholesale revision of the Aviation Act, and provided that CAB would be dismantled in 1985. Pub.L. No. 95–504, 92 Stat. 1705 (1978). In 1984, additional statutory amendments were required to actually phase out CAB; Congress codified these in

the "CAB Sunset Act," which transferred CAB's duties to other agencies. Pub.L. No. 98–443, 98 Stat. 1703 (1984). Section 411(b) was part of the Sunset amendments; former Section 411 was renumbered 411(a).

Section 411 granted express power to CAB (and now DOT): "The Board may, upon its own initiative or upon complaint by any air carrier * * * investigate and determine whether any air carrier * * * is engaged in unfair or deceptive practices or unfair methods of competition * * *." 49 U.S.C.App. § 1381(a). Section 411(b) allows airlines to incorporate carriage contracts by reference in their tickets, subject to regulation by the Board. Both provisions deal with the Board's authority over commercial practices of the airline industry; it is hard to imagine why one provision would require an implied private cause of action if the other did not. Section 411(a) does not create a private right to sue, *Polansky v. Trans World Airlines, Inc.,* 523 F.2d 332, 338–340 (3rd Cir.1975), and nothing about Section 411(b) suggests that it should be read differently from its counterpart.

The Sunset Act's legislative history offers more evidence that Congress intended Section 411(b) to give DOT, not private parties, the right to enforce its provisions. The House Report speaks about the importance of "consumer protection" on several occasions, but always with the understanding that DOT will take over CAB's power to protect consumers by issuing regulations. The Report begins: "[D]eregulation has been generally successful * * * [h]owever, the Committee believes that legislation is needed * * * to ensure that some limited but highly important CAB functions, such as consumer protection, will continue to be carried out by other agencies after CAB sunset." H.R.Rep. No. 98–793, 98th Cong., 2d Sess. 1, 14, reprinted in 1984 U.S.C.C.A.N. 2857, 2858. The Report noted that consumer protection authority would be exercised by DOT, *id.* at 2860, and stated that Section 411(b):

Amends Section 411 of the Federal Aviation Act to clarify *CAB's authority* to issue regulations establishing uniform requirements governing notice to passengers of terms of the contract between an airline and its passengers which are incorporated by reference. * * * The amendment in this section clarifies that issuance of this type of regulation is a proper exercise of *CAB's authority.*

*Id.* at 2870 (emphasis added). The Report thus establishes that DOT, not private parties, will enforce consumer protection rules against the airlines. In sum, Section 411(b)'s language, structure and legislative history all show that Congress intended Section 411(b) to clarify CAB's regulatory power over airlines. Since a private right of action need not be implied to further this intent, we hold that Section 411(b) does not create one.

■ This almost ends Statland's case—but she had some state law claims that were dismissed for lack of supplemental jurisdiction once the district court decided that Section 411(b) did not give Statland a federal cause of action. The court could have retained jurisdiction over Statland's state law claims to decide that they are preempted by federal law; since it did not, we will, in order to conserve the resources of Illinois state courts. *DeBruyne v. Equitable Life Assurance Society,* 920 F.2d 457, 468 n. 23 (7th Cir.1990); *Graf v. Elgin, Joliet & Eastern Railway Co.,* 790 F.2d 1341, 1347 (7th Cir. 1986). The Airline Deregulation Act added an express preemption clause to the Aviation Act providing that states shall not "enact or enforce any law, rule, regulation, standard, or other provision having the force and effect of law relating to rates, routes or services of any carrier * * *." 49 U.S.C.App. § 1305(a). *Morales v. Trans World Airlines, Inc.,* —— U.S. ——, ——, 112 S.Ct. 2031, 2037, 119 L.Ed.2d 157 found that "the[se] words express a broad pre-emptive purpose," and held that Texas guidelines governing air fare advertising were preempted by the Deregulation Act because they related to rates. This Court had also held (before *Morales* ) that the Deregulation Act preempted state claims challenging an airline's ticket advertising policies. *Illinois Corporate Travel, Inc. v. American Airlines, Inc.,* 889 F.2d 751, 754 (7th Cir.1989).

Statland's state law claims are for breach of fiduciary duty, violation of the Illinois Consumer Fraud and Deceptive Practices Act,

conversion and breach of contract. The conduct she complains of is the same for each claim, however: she protests American's practice of withholding 10 percent of the federal tax on canceled tickets. We think it obvious that canceled ticket refunds relate to rates. Under *Morales* and 49 U.S.C.App. § 1305(a), states cannot regulate American's ticket refund practices either by common law or by statute. This sweeps aside Statland's state law claims.

Since Section 411(b) does not give Statland a federal cause of action to challenge American's conduct, and since her state law claims are preempted by federal law, Statland's case is at an end. If she wants American to change its ticket refund policies, she may complain to the Department of Transportation.

AFFIRMED.