# United States Court of Appeals
## For the First Circuit

---

No. 03-1843

MIGUEL BONANO,
Plaintiff, Appellant,

v.

EAST CARIBBEAN AIRLINE CORPORATION ET AL.,
Defendants, Appellees.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Jaime Pieras, Jr., Senior U.S. District Judge]

---

Before

Selya, Circuit Judge,
Coffin, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Francisco Rivera Bujosa, with whom José R. Santiago Pereles, Santiago Pereles & Collazo, P.S.C., and Bufete Rivera Bujosa & Maldonado Avilés were on brief, for appellant.
Lisabel M. Negrón Vargas, with whom Edgardo L. Rivera Rivera, and Rivera & Fernandez-Reboredo, P.S.C., were on brief, for appellees Puerto Rico Ports Authority, Héctor Rivera, Herman Sulsona, and Miguel Casillas.
Ivonne Cruz Serrano, with whom Luis F. Montijo Law Offices was on brief, for remaining appellees.

---

April 22, 2004

---

**SELYA**, **Circuit Judge**.  This appeal presents the pointed question of whether particular regulations promulgated pursuant to the Federal Aviation Act (the FAA or the Act) create a private right of action.  Because we find that recent Supreme Court precedent forecloses the implication of a private right of action here, we affirm the district court's entry of judgment for the defendants.

We marshal only those facts necessary to understand and resolve the issue before us, extracting those facts from the second amended complaint.  We urge the reader who hungers for additional background to consult the lower court's opinion.  See Bonano v. E. Caribbean Airline Corp., 253 F. Supp. 2d 166 (D.P.R. 2003).

Plaintiff-appellant Miguel Bonano contracted with East Caribbean Airline Corporation for air transportation and related travel services between Ponce, Puerto Rico and other destinations in the United States.  East Caribbean was to furnish these services at divers times between September 22, 1997 and January 11, 1998.  In mid-December, however, East Caribbean ceased operations.  It thereafter defaulted on its remaining contractual obligations (including its obligation to return monies advanced by the appellant).

On July 28, 2000, the appellant brought suit in the federal district court.[1] His complaint named East Caribbean and a gallimaufry of other defendants. It alleged, inter alia, violations of the regulations promulgated under the Act. See 14 C.F.R. §§ 380.12, 380.32(f) & (k), 380.34.[2] These allegations comprise the sole basis of federal subject matter jurisdiction.

The case progressed at a snail's pace. During this evolutionary process, the appellant obtained a default judgment against East Caribbean; the district court dismissed several defendants, including Banco Popular de Puerto Rico and Citibank (alleged to have been depositories for certain funds that East Caribbean had agreed to escrow); and the court bid farewell to East Caribbean's chief executive officer, Dr. Benny Rosado, due to a failure of service of process. None of these orders has been appealed.

The operative pleading here — the appellant's second amended complaint — presents a slightly refined version of the same

---

[1] The appellant commenced this suit as a putative class action on behalf of a class of persons who had contracted with East Caribbean and had been left empty-handed. The district court dismissed the suit before confronting the question of class certification.

[2] Title 14 of the Code of Federal Regulations deals generally with aeronautics and space matters. Chapter II of Title 14 deals with aviation proceedings. Subchapter D of Chapter II lists a variety of special regulations. These encompass Part 380, which contains regulations applicable to public charters for interstate or foreign transportation of passengers.

claims against a subset of defendants. These defendants include the Puerto Rico Ports Authority (the local licensing agency for aeronautical matters), Dr. Herman Sulsona and Héctor Rivera (officials of the Authority), Miguel Casillas (general manager of the Mercedita airport), Royal Insurance Company, and Royal and Sun Alliance (the latter two defendants are allegedly East Caribbean's insurers). Acting on that pleading, the district court dismissed the case against all these defendants. Bonano, 253 F. Supp. 2d at 172.

Because this order of dismissal provoked the instant appeal, we trace the anatomy of the district court's decision. The court first found that it had jurisdiction over the claims asserted in the appellant's second amended complaint. Id. at 170-71. It then determined that the regulations promulgated in pursuance of the Act afforded an aggrieved party, such as the appellant, a private right of action. Id. at 171. The court nonetheless found that the claims were barred by the applicable rule of timeliness. Id. at 171-72.

The defendants have not appealed from the lower court's determination that a private right of action existed. But this determination is the linchpin of federal jurisdiction in this case: the appellant premises jurisdiction on claims that supposedly arise under federal law, 28 U.S.C. §§ 1331, 1337(a), and without a cause of action under the Act or the regulations, no such jurisdiction

would attach.  See, e.g., Sam L. Majors Jewelers v. ABX, Inc., 117 F.3d 922, 924-25 (5th Cir. 1997); Statland v. Am. Airlines, Inc., 998 F.2d 539, 539 (7th Cir. 1993); see also Templeton Bd. of Sewer Comm'rs v. Am. Tissue Mills of Mass., Inc., 352 F.3d 33, 36-37 (1st Cir. 2003).  Because arguments that affect a court's subject matter jurisdiction are not waivable, see United States v. Horn, 29 F.3d 754, 767-68 (1st Cir. 1994), we consider ourselves duty-bound to determine first whether a private right exists.

This conclusion brings us face to face with the question of whether Congress intended private enforcement of the FAA.  That is a question of statutory interpretation and, thus, engenders de novo review.  See, e.g., Strickland v. Comm'r, Me. Dep't of Human Servs., 96 F.3d 542, 545 (1st Cir. 1996); see also Rolland v. Romney, 318 F.3d 42, 51-52 (1st Cir. 2003).

We begin with the obvious:  Congress, with a single exception (not applicable here, but discussed infra), has not explicitly provided for private enforcement of the Act. Consequently, if a private right of action exists, it must be implied.  In recent years, the Supreme Court has clarified the principles that must be used to determine the existence vel non of an implied private right of action.  See Gonzaga Univ. v. Doe, 536 U.S. 273, 283-86 (2002); Alexander v. Sandoval, 532 U.S. 275, 286-92 (2001).  Those clarifying decisions necessarily guide our analysis.

A private right of action, like substantive federal law itself, must be created by Congress. See Sandoval, 532 U.S. at 286. The judiciary's task is to interpret the statute that Congress has enacted in order to determine what the statute reveals about Congress's intentions. Transam. Mortg. Advisors, Inc. v. Lewis, 444 U.S. 11, 15-16 (1979).

For a court to find the existence of a private right of action, it must affirmatively answer two inquiries. The first involves whether Congress intended to create a private right. Gonzaga Univ., 536 U.S. at 283. The second involves whether Congress intended to create a corresponding remedy. Id. at 284. The latter inquiry sometimes is superfluous: if a statute does not grant a private right, an inquiring court need go no further. See id. at 283-84.

The district court premised its determination that an implied private right of action existed largely on 14 C.F.R. § 380.4 (providing an enforcement scheme for Part 380, see supra note 2). Bonano, 253 F. Supp. 2d at 171. But the language of the regulation itself does not appear to contemplate private enforcement. In terms, the regulation provides that in "the case of any violation of the [Act] . . . the violator may be subject to a proceeding pursuant to the [Act] before the Department or a U.S. district court . . . to compel compliance therewith" or for civil or criminal penalties "pursuant to the provisions of the [Act]."

14 C.F.R. § 380.4. This language, read naturally, does no more than confirm the statutorily authorized rights of enforcement — and those rights do not include private rights of action. In all events, a regulation, on its own, cannot create a private right of action. See Sandoval, 532 U.S. at 291. The source of any such right must be found in the text of the statute. See id.

We turn, then, to the Act, examining its text with an eye toward determining whether it manifests congressional intent to create a private right of action. In that exercise, we are mindful that a statute ought not be read to create a private right of action unless its text is "phrased in terms of the persons benefited." Gonzaga Univ., 536 U.S. at 283-84 (quoting Cannon v. Univ. of Chi., 441 U.S. 677, 692 n.13 (1979)). If a statute does not cede private rights to an identifiable class, it fails on the first prong of the test. Id.; Sandoval, 532 U.S. at 289.

The Act cedes no such rights. Congress originally enacted the FAA in 1958. See Pub. L. No. 85-726, 72 Stat. 731.[3] The purpose of the legislation was "to establish a new Federal agency with powers adequate to enable it to provide for the safe and efficient use of the navigable airspace." H.R. Rep. No. 85-2360 (1958), reprinted in 1958 U.S.C.C.A.N. 3741, 3741. As this makes clear, the Act is regulatory in nature — and private rights

---

[3]In 1994, Congress retooled the Act. See Pub. L. No. 103-272, 108 Stat. 745. Although this revamping significantly altered the designation of provisions, the substance remains the same. Id.

of action should rarely be implied where a statute's core function is to furnish directives to a federal agency.  See Statland, 998 F.2d at 540.

Moreover, the Act, fairly read, comprises a general regulation of activities and does not focus on a benefited class. Such a regime is precisely "the kind of general ban which carries with it no implication of an intent to confer rights on a particular class of persons."  California v. Sierra Club, 451 U.S. 287, 294 (1981).  When Congress designs regulatory legislation to benefit the general public, rather than any particular class, that configuration suggests that the legislation is likely to be infertile territory for the implication of a private right of action.  See id. at 294-98; Montauk-Caribbean Airways, Inc. v. Hope, 784 F.2d 91, 97 (2d Cir. 1986).  Indeed, for a statute to create private rights of action, "its text must be phrased" in terms of the class protected.  Gonzaga Univ., 536 U.S. at 284 (emphasis supplied) (internal quotation marks omitted).

To cinch matters, the scheme of enforcement actually spelled out in the Act counsels persuasively against implying a private right of action.  For one thing, under 49 U.S.C. § 40113, the Secretary of Transportation has power to conduct investigations, prescribe regulations, and issue orders.  Other provisions of the Act share this emphasis on official involvement. See, e.g., id. § 46101 (noting that a "person may file a complaint

in writing with the Secretary of Transportation . . . about a person violating this part or a requirement prescribed under this part" and providing further that the Secretary "shall investigate the complaint if a reasonable ground appears . . . for the investigation"); id. § 46106 (giving the Secretary of Transportation the power to "bring a civil action against a person in a district court of the United States to enforce this part or a requirement or regulation prescribed, or an order or any term of a certificate or permit issued, under this part"); id. § 46107 (giving the Attorney General the power to bring a civil action in certain circumstances). This plainly exhibits Congress's preference for public enforcement.

There is one narrow exception to this emphasis on public enforcement. The exception provides for a private right of action to enforce section 41101(a)(1) (a section authorizing an air carrier to provide air transportation only if the carrier holds a certificate allowing the activity). See id. § 46108. That exception is aimed at conflicts between carriers and, insofar as we can tell, does not pertain here. The second amended complaint neither cites this statutory provision nor makes any allegations related to the lack of appropriate certification. Thus, the existence of this express private right of action — which is isthmian in its scope — serves only to bolster our conclusion that implying a private right of action here would be wrong. See

-9-

<u>Sandoval</u>, 532 U.S. at 290 ("The express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."); <u>Transam. Mortg. Advisors</u>, 444 U.S. at 19 (noting that "it is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it"); <u>Diefenthal</u> v. <u>Civil Aeronautics Bd.</u>, 681 F.2d 1039, 1049 (5th Cir. 1982) ("When Congress has established a detailed enforcement scheme, which expressly provides a private right of action for violations of specific provisions, that is a strong indication that Congress did not intend to provide private litigants with a means of redressing violations of other sections of the Act.").

We are not confined to the lower court's rationale, but may affirm a judgment on any independent ground made manifest by the record. <u>See</u> <u>Martel</u> v. <u>Stafford</u>, 992 F.2d 1244, 1245 (1st Cir. 1993). We do so here: it is abundantly clear that Congress, in crafting the Act, intended public, not private, enforcement. Consequently, we join a long list of other courts that have concluded that neither the Act nor the regulations create implied private rights of action. <u>See</u>, <u>e.g.</u>, <u>Schmeling</u> v. <u>NORDAM</u>, 97 F.3d 1336, 1344 (10th Cir. 1996); <u>G.S. Rasmussen & Assocs., Inc.</u> v. <u>Kalitta Flying Serv., Inc.</u>, 958 F.2d 896, 901-02 (9th Cir. 1992); <u>Air Transport Ass'n</u> v. <u>Public Utilities Comm'n</u>, 833 F.2d 200, 207

(9th Cir. 1987); <u>Montauk-Caribbean</u>, 784 F.2d at 97-98; <u>Wolf</u> v. <u>Trans World Airlines, Inc.</u>, 544 F.2d 134, 136-38 (3d Cir. 1976).[4]

We need go no further.  Having concluded that Congress had no intention to create a privately enforceable right of action when it enacted the FAA, we forgo further inquiry and affirm the dismissal of the instant action as to all the remaining defendants.

**Affirmed**.

---

[4]We note that the Seventh Circuit, at one time, found a private right of action for individual air travelers against insolvent tour operators. <u>Bratton</u> v. <u>Shiffrin</u>, 635 F.2d 1228, 1230-32 (7th Cir. 1980).  Because the Supreme Court's decision in <u>Sandoval</u> changed the legal landscape, we regard that pre-<u>Sandoval</u> decision as lacking continued vitality. <u>See</u>, <u>e.g.</u>, <u>Love</u> v. <u>Delta Air Lines</u>, 310 F.3d 1347, 1358-59 (11th Cir. 2002) (noting that the <u>Sandoval</u> decision had rendered unpersuasive the reasoning employed in previous cases in which private rights had been implied); <u>Southwest Air Ambul., Inc.</u> v. <u>City of Las Cruces</u>, 268 F.3d 1162, 1170-71 (10th Cir. 2001) (noting the recent shift in the Supreme Court's implied right of action jurisprudence and implying that this shift may be outcome-determinative in some FAA cases); <u>see also</u> Fed. Proc., Lawyer's Edition § 7:779 (noting that the continued vitality of any decisions finding a private right of action under the FAA may have been called into question after <u>Alexander</u> v. <u>Sandoval</u>).