# United States Court of Appeals
## For the First Circuit

No. 06-1625

CRAIG BUCK ET AL.,

Plaintiffs, Appellants,

v.

AMERICAN AIRLINES, INC., ET AL.,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Howard, Circuit Judge,
Selya, Senior Circuit Judge,
and Shadur,* Senior District Judge.

Evans J. Carter, with whom Evans J. Carter, P.C. was on brief, for appellants.
Matthew A. Porter, with whom Michael S. Shin and Dechert LLP were on brief, for appellees American Airlines, Inc., Alaska Airlines, Inc., Continental Airlines, Inc., Southwest Airlines Co., Airlines Reporting Corp., and Air Transport Association of America, Inc.
Ethan G. Shenkman, with whom Daniel M. Esrick, David W. Ogden, and Wilmer Cutler Pickering Hale and Dorr LLP were on brief, for appellee Deutsche Lufthansa A.G.
Kevin C. Cain and Peabody & Arnold LLP on brief for appellees

*Of the Northern District of Illinois, sitting by designation.

Aer Lingus Ltd., Alitalia-Linee Aeree Italiane S.p.A. d/b/a Alitalia Airlines, and British Airways, PLC, d/b/a British Airways.
Thomas J. Whalen, with whom Kathleen M. Guilfoyle, Campbell Campbell Edwards & Conroy, P.C., and Eckert Seamans Cherin & Mellott, LLC were on brief, for appellees China Eastern Airlines Co. and China Southern Airlines Co.

February 7, 2007

**SELYA**, **Senior Circuit Judge**. When the plaintiffs in this case purchased nonrefundable airline tickets that they ultimately were unable to use, they received no payback of any kind. In the lawsuit that followed, they conceded that they were correctly denied any refund of their base fares but accused the airlines of unlawfully failing to refund various fees and taxes that had been collected as part of the original ticket prices. The plaintiffs' core theory was that the word "nonrefundable" pertained only to their base fares, not to the various other charges (none of which became due without travel).

The district court found the plaintiffs' claims preempted and dismissed the suit for failure to state a viable cause of action. We too conclude that the plaintiffs are fruitlessly endeavoring to fly in unfriendly skies. Consequently, we affirm the order of dismissal.

## I.  BACKGROUND

On November 4, 2004, fifteen individuals filed suit against a number of airlines and related entities in a Massachusetts state court. The plaintiffs alleged that the defendants had wrongfully retained fees and taxes collected at the time of their purchase of nonrefundable tickets. This retention of funds was wrongful, the plaintiffs maintained, because they never used the tickets and, thus, the fees and taxes, which did not

become due until the commencement of air travel, should have been returned.

The defendants removed the case to the federal district court. The plaintiffs, now reduced to nine in number, served an amended complaint (the operative pleading for our purposes) that named six domestic and seven international airlines as the culprits.[1] The fees and taxes said to have been wrongly withheld include passenger facility charges, see 14 C.F.R. § 158.5; customs fees, see 19 C.F.R. § 24.22(g)(1); immigration fees, see 8 C.F.R. § 286.2; agricultural quarantine fees, see 7 C.F.R. § 354.3(f); security fees, see 49 C.F.R. § 1510.5; and charges on behalf of foreign sovereigns (collectively, the fees). The amended complaint named as additional defendants two trade associations (Airlines Reporting Corp. and Air Transport Association of America, Inc.), alleging that they had been complicit in allowing the airlines wrongfully to retain the fees.

---

[1]Of the domestic airlines, American Airlines, Alaska Airlines, Continental Airlines, and Southwest Airlines remain as defendants. Two other domestic carriers (Northwest and Delta) have been dismissed due to ongoing bankruptcy proceedings. The international airlines named in the suit are Aer Lingus, Alitalia, British Airways, China Eastern Airlines, China Southern Airlines, Lufthansa, and Olympic Airways. Of these, six remain (Olympic Airways appears to have been dropped as a party). The Federal Aviation Administration (FAA) also was named, but the district court dismissed all claims against the FAA on grounds wholly unrelated to the issues raised on appeal.

The plaintiffs averred that, in keeping the fees, the defendants violated a host of federal regulations, most notably a regulation that provides:

> A passenger shall not be bound by any terms restricting refunds of the ticket price, imposing monetary penalties on passengers, or permitting the carrier to raise the price, unless the passenger receives conspicuous written notice of the salient features of those terms on or with the ticket.

14 C.F.R. § 253.7. The plaintiffs claim that the retained fees constitute a forbidden monetary penalty, imposed without due notice. In this connection, they admit having had adequate notice that their tickets were nonrefundable; in their view, however, this only alerted them to the fact that they could not recover the base ticket price. They had no notice that the fees would be forfeit as well.

The plaintiffs cloaked this theory in pleochroic raiment; their multitudinous statements of claim included counts for declaratory judgment, rescission, breach of contract, unjust enrichment, breach of a covenant of good faith and fair dealing, breach of fiduciary duty, and civil conspiracy. In addition, the plaintiffs purposed to sue pursuant to an implied right of action arising under a federal regulation. Their prayer for relief requested certification of a class; a declaration that (i) the airlines had failed to provide adequate notice of an intention to withhold the fees and (ii) the airlines' retention of the fees was

wrongful; treble damages; injunctive and other equitable remediation; and attorneys' fees.

A majority of the defendants moved to dismiss on the ground, inter alia, that all the claims were preempted by section 105(a) of the Airline Deregulation Act (ADA), 49 U.S.C. § 41713(b)(1). The district court granted the motion to dismiss. Harrington v. Delta Air Lines, Inc., No. Civ. A. 04-12558, 2006 WL 1581752, at *7-8 (D. Mass. Feb. 21, 2006). The court, acting sua sponte, extended its ruling to cover those defendants that had not joined in the original motion.[2] See id. This timely appeal followed.

## II. STANDARD OF REVIEW

This case arrives on our doorstep following the entry of a judgment of dismissal pursuant to Rule 12(b)(6). Consequently, "we review the lower court's dismissal order de novo, accepting the plaintiffs' well-pleaded facts as true and indulging all reasonable inferences to their behoof." McCloskey v. Mueller, 446 F.3d 262, 266 (1st Cir. 2006). In conducting that tamisage, however, "bald assertions, unsupportable conclusions, periphrastic circumlocutions, and the like need not be credited." Aulson v. Blanchard, 83 F.3d 1, 3 (1st Cir. 1996).

---

[2]Those defendants had chosen instead to contest personal jurisdiction.

**III. DISCUSSION**

We begin our analysis with the plaintiffs' lone federal-law claim[3]: their claim of an implied right of action under 14 C.F.R. § 253.4 and § 253.7. These provisions govern the disclosure of terms in contracts for air travel. Among other things, they prevent airlines from claiming the benefit of contract terms not incorporated by reference in a specified manner. See 14 C.F.R. § 253.4(a). They go on to restrict the authority of airlines to impose monetary penalties on passengers without clear notice. See id. § 253.7. In this instance, the plaintiffs argue that they were denied notice that they would forfeit the fees (in addition to the base fares) in the event that they did not use their nonrefundable tickets.

In support of this argument, the plaintiffs invoke the test formulated in Cort v. Ash, 422 U.S. 66 (1975), which they insist controls whether a private right of action is to be implied in connection with a federal statute. Under that test, courts are to ask four questions:

---

[3]Although the plaintiffs style "declaratory judgment" as a cause of action, the provision that they cite, 28 U.S.C. § 2201(a), creates a remedy, not a cause of action. See, e.g., Muirhead v. Mecham, 427 F.3d 14, 17 n.1 (1st Cir. 2005) (noting that section 2201 "neither provides nor denies a jurisdictional basis for actions under federal law, but merely defines the scope of available declaratory relief" (internal quotation marks omitted)). The actual claims asserted by the plaintiffs, save only for the implied right of action claim, have their genesis in state law.

> [I]s the plaintiff a member of the class for whose "especial benefit" the statute was passed? Is there any cogent indication of legislative intent to create or deny the remedy sought? Would recognition of the remedy be "consistent with the underlying purposes" of the statutory scheme? Would it be inappropriate to infer a federal remedy because "the cause of action [is] one traditionally relegated to state law . . ."?

Royal Business Grp., Inc. v. Realist, Inc., 933 F.2d 1056, 1060 (1st Cir. 1991) (quoting and paraphrasing Cort, 422 U.S. at 78) (alternations in original).[4] The plaintiffs maintain that the regulations' goal is to protect consumers and, thus, that it is appropriate to imply a private right of action.

This argument cannot withstand scrutiny. In the first place, the plaintiffs misapprehend the relevant unit of analysis. Regulations alone cannot create private rights of action; the source of the right must be a statute. See Alexander v. Sandoval, 532 U.S. 275, 291 (2001); Iverson v. City of Boston, 452 F.3d 94, 100 (1st Cir. 2006). The regulations upon which the plaintiffs rely were promulgated pursuant to 49 U.S.C. § 41707 — a statute that has its roots in the CAB Sunset Act, Pub. L. No. 98-443, § 7, 98 Stat. 1703, 1706 (1984). The CAB Sunset Act embodies a series

---

[4]We previously have questioned the continuing vitality of the Cort test. See Rolland v. Romney, 318 F.3d 42, 52 n.9 (1st Cir. 2003). At the very least, the second factor — legislative intent to create a remedy — appears to be ascendant. See id. Here, however, the plaintiffs cannot prevail even under the original Cort test. Thus, we elect to address their argument in the terms in which they have presented it.

-7-

of amendments to the ADA, which six years earlier had significantly revamped the Federal Aviation Act.[5] We recently rejected an entreaty to imply a private cause of action pursuant to other regulations implementing the ADA. See Bonano v. E. Carib. Airline Corp., 365 F.3d 81, 84-85 (1st Cir. 2004). In the process, we made clear that, for the purpose of implying private rights of action, the Federal Aviation Act (and, hence, the ADA, see supra note 5) is barren soil. See id. There is nothing about the case at bar that shakes our confidence in that assessment.

To cinch matters, "[e]very court faced with the question of whether a consumer protection provision of the ADA allows the implication of a private right of action against an airline has answered the question in the negative." Casas v. Am. Airlines, Inc., 304 F.3d 517, 522 n.7 (5th Cir. 2002) (quoting Musson Theatrical, Inc. v. Fed. Express Corp., 89 F.3d 1244, 1252 (6th Cir. 1996)); see Statland v. Am. Airlines, Inc., 998 F.2d 539, 540-41 (7th Cir. 1993) (declining to imply a private right of action under the statutory provision at issue in this case). We see no justification for creating a circuit split. Thus, we hold that the consumer protection provisions of the ADA do not permit the imputation of a private right of action against an airline and

_____

[5]For ease in reference, we henceforth will refer to the ADA, employing that acronym to encompass the entire scope of the revamped statute, including provisions that originated in the Federal Aviation Act.

that, therefore, the plaintiffs do not have an implied right of action under 14 C.F.R. § 253.4 or § 253.7.

Lacking a federal-law cause of action, the plaintiffs are relegated to their array of state-law claims. See supra note 3. Yet, even though Massachusetts law offers them a cornucopia of vehicles for their theory that the fees should have been refunded, this bounty avails them naught; state-law claims premised on that theory cannot survive the ADA's broad preemptive sweep. We explain briefly.

Pertinently, the ADA declares that no state may "enact or enforce a law, regulation, or other provision having the force and effect of law related to a price, route, or service of an air carrier." 49 U.S.C. § 41713(b)(1). The Supreme Court has offered considerable guidance as to how this preemption provision should be construed. In Morales v. Trans World Airlines, Inc., 504 U.S. 374 (1992), the Court referred to the "sweeping nature" of the preemption provision, emphasizing the reach of the provision's "relationship" language.[6] Id. at 384. The Morales Court held that

---

[6]The version of the ADA in effect when the Court decided Morales used the phrase "relating to" in place of the phrase "related to" (used in the current version). We heretofore have noted, and today reaffirm, that this slight change in terminology, which occurred in 1994, had no substantive effect on the provision and does not undercut the precedential value of Morales. See N.H. Motor Transp. Ass'n v. Rowe, 448 F.3d 66, 75 n.11 (1st Cir. 2006).

the provision should be construed broadly.[7]  Id. at 384-85.  This court has explained that, under Morales, the ADA preempts both laws that explicitly refer to an airline's prices and those that have a significant effect upon prices.  See United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 335 (1st Cir. 2003).

Three years after Morales, the Supreme Court reaffirmed the breadth of the ADA's preemption provision.  See Am. Airlines, Inc. v. Wolens, 513 U.S. 219, 223 (1995).  However, the Court carved out an exception for "suits alleging no violation of state-imposed obligations, but seeking recovery solely for the airline's alleged breach of its own, self-imposed undertakings."  Id. at 228. It follows that, in order to avoid preemption, the plaintiffs in this case must demonstrate either that their state-law claims do not constitute state enforcement related to airline prices or services, or that they can navigate the straits of the Wolens exception.

The plaintiffs' doctrinal starting point is the assertion that their claims are outside the ambit of ADA preemption because they seek to enforce federal, not state, regulatory requirements.

---

[7]In adopting this expansive reading, the Morales Court relied, in part, upon its interpretation of similar language in the Employee Retirement Income Security Act (ERISA), 29 U.S.C. § 1144(a).  See Morales, 504 U.S. at 383-87.  This umbilical cord has since been severed.  See United Parcel Serv., Inc. v. Flores-Galarza, 318 F.3d 323, 335 n.19 (1st Cir. 2003).  Thus, the meaning of the ADA's preemption provision is no longer entwined with the meaning of ERISA's preemption provision.

At the heart of this assertion lies the dubious premise that since federal rules govern the airlines' collection of the fees and provide certain forms of passenger protection in the contracting process, only federal policies are being advanced by this litigation. On this telling, "[s]tate court enforcement of Federal law is <u>not</u> the same as enforcement of a State-imposed requirement," and the fact that the causes of action themselves spring from state law is less important than the source of the underlying policies. Appellants' Br. at 29. This is so, the plaintiffs asseverate, because federal preemption should not disrupt federal policies; after all, nationwide uniformity is the driver for preemption, <u>see</u> <u>Morales</u>, 504 U.S. at 378, and that uniformity is not offended by enforcement of federal policies.

This sleight of hand will not work. While the plaintiffs strive to characterize their suit as one that invokes state remedies to right a federal wrong, that characterization does not ring true. More accurately, they are attempting to invoke state remedies to further a state policy: that those who are wronged should have individualized access to the courts in order to remediate that wrong. <u>Cf.</u> <u>Santagate</u> v. <u>Tower</u>, 833 N.E.2d 171, 176 (Mass. App. Ct. 2005) (discussing how Massachusetts provides an "equitable remedy" for those without "an adequate remedy at law"). It is the imposition of this state policy that would constitute forbidden state enforcement, in violation of the ADA's preemption

-11-

provision, because the ADA itself provides no private right of action.

As an alternative, the plaintiffs posit that allowing their suit to proceed "does not — and in fact cannot — affect the prices (or rates), routes, or services [of airlines], since the redress occurs only <u>after</u> the prices (or rates), routes, and services have been determined by the Air Industry." Appellants' Br. at 19-20. In their view, "[a]irline ticket prices (or rates) are composed of two separate components: (1) the <u>fare prices</u> (or rates) set by the airlines, which comprise the base cost of a ticket, and (2) the <u>taxes, fees, and, charges</u> imposed by the Government or other fee-levying authorities." <u>Id.</u> at 21.

This dichotomy blurs when contextualized within the contours of the "significant effect" doctrine. Although the fees are in one sense separate from the base fare, the two are inextricably intertwined. In all events, an air traveler's concern is with the overall cost of his or her ticket. Thus, when an airline establishes the base fare, it must take cognizance of any surcharges that will be imposed by operation of law.

It is freshman-year economics that higher prices mean lower demand, and that consumers are sensitive to the full price that they must pay, not just the portion of the price that will stay in the seller's coffers. For that reason, an airline must account for the fees when setting its own rates. It follows that

-12-

a finding for the plaintiffs in this case would impact base fares — and since past judgments affect future behavior, this is as true of the retrospective relief requested by the plaintiffs as it is of the prospective relief that they request.

In view of these practical realities, it is not surprising that most of the courts to have considered suits for refunds of government fees associated with air travel have found those suits preempted.[8]  See, e.g., Statland, 998 F.2d at 542; Lehman v. USAIR Grp., Inc., 930 F. Supp. 912, 916 (S.D.N.Y. 1996); Kaucky v. Sw. Airlines Co., No. 96 C 750, 1996 WL 267875, at *4 (N.D. Ill. May 17, 1996).  These cases corroborate the inevitability of a finding of preemption.[9]

The plaintiffs next argue that their suit was improvidently dismissed because their contract-based claims fit within the Wolens exception. But the plaintiffs' amended complaint identifies only a single word — "nonrefundable" — as common to their contracts of carriage with a multitude of airlines.  It seems fanciful to suggest, in the circumstances of this case, that the word "nonrefundable" alone can anchor a breach of contract claim.

_____

[8]We say "most" because at least one court has found to the contrary.  See In re Air Transp. Excise Tax. Litig., 37 F. Supp. 2d 1133, 1140 (D. Minn. 1999).  We regard that decision as mistaken.

[9]In addition to alleging that the instant suit relates to price, the defendants also have argued that the suit relates to airline service.  Since we find preemption on price grounds, we need not reach the question.

-13-

The same result would follow even if, as the plaintiffs insist, the word "nonrefundable" is ambiguous. At best, an ambiguity would furnish a rejoinder to a claim that the airlines gave clear notice about fees being forfeit. It could not, without more, support a claim that the defendants have breached their duty to treat the tickets as "nonrefundable" by withholding both the fare and the fees.

The plaintiffs attempt to circumvent this conspicuous obstacle by latching onto the federal regulatory guidelines relating to the disclosure of terms in airline contracts. These guidelines, they suggest, are "<u>federally</u> mandated terms of their air travel contracts." Appellants' Br. at 20. In making this point, the plaintiffs again emphasize 14 C.F.R. § 253.7, the provision prohibiting the imposition of monetary penalties without clear notice.[10] The plaintiffs allege that this regulation is written implicitly into every airline contract of carriage and

_____

[10]The plaintiffs list a dizzying assortment of other federal regulations and describe them as relevant. <u>See</u>, <u>e.g.</u>, 7 C.F.R. § 354.3(f); 8 C.F.R. § 286.4; 14 C.F.R. §§ 158.45, 158.47; 19 C.F.R. § 24.22(g)(4); 49 C.F.R. § 1510.9. These regulations, which dictate how airlines are supposed to collect and hold the fees, are too far removed from the contracts of carriage to give rise to a colorable claim that they are incorporated as contract terms. In all events, the plaintiffs offer no developed argumentation for the proposition that these peripheral regulations comprise federally mandated contract terms. Any such argument is, therefore, abandoned. <u>See</u> <u>United States</u> v. <u>Zannino</u>, 895 F.2d 1, 17 (1st Cir. 1990).

thus, by retaining the fees, the airlines have breached their contractual duty not to levy an unwarned monetary penalty.

The plaintiffs have not directed us to a single case holding that a federal regulation incapable of spawning an implied private right of action may be enforced between private parties as an implicit contract term. The precedent that they most loudly trumpet — the Texas Supreme Court's decision in Delta Air Lines, Inc. v. Black, 116 S.W.3d 745 (Tex. 2003) — is inapposite. The contract at issue there explicitly incorporated federal regulations. See id. at 755.

We conclude, without serious question, that the proposition asserted by the plaintiffs is untenable. As they conceded at oral argument, construing all federal regulations touching upon air travel as automatically incorporated into every airline's contracts of carriage would allow litigants freely to skirt the implied right of action doctrine. There is nothing to distinguish the regulation at issue here from the mine-run of federal regulations touching upon air travel, and we will not countenance the flagrant undermining of Supreme Court doctrine that the plaintiffs invite.

Our reluctance is evidently shared by the Fifth Circuit, which confronted a similar problem in Casas. There, the plaintiff argued for a remedy under federal common law with respect to violations of regulations prescribed by the federal Department of

Transportation.  The court rejected this argument, observing that a contrary holding "would be, in substance, to craft a private right of action for violations of [the regulation] — and thus to circumvent the conclusion that the ADA, and therefore the regulations enacted pursuant to it, creates no private right of action."  Casas, 304 F.3d at 525.  Like the Fifth Circuit, we refuse to abet a blatant evasion of the implied right of action doctrine.

To say more on this point would be supererogatory.  At bottom, the plaintiffs would have us believe that the implied right of action doctrine contains a gaping aperture that allows federal regulations, promulgated pursuant to a statute that creates no right of private enforcement, to be privately enforced through state-law mechanisms.  We cannot imagine that the Supreme Court, which has devoted nearly three decades to cabining the implied right of action doctrine, see Richard H. Fallon et al., Hart & Wechsler's The Federal Courts and the Federal System 781-82 (5th ed. 2003), would approve so vagarious a course.  We hold instead that, because no implied right of action exists under the ADA and the regulation at issue here, the regulation cannot be read as an implied contract provision.

Next, the plaintiffs launch a naked appeal to public policy.  They tell us that if state-law causes of action are denied them, there will be a wrong (the airlines' withholding of the fees)

-16-

without a remedy.  Put in more hyperbolic terms, a rejection of the plaintiffs' claims would render "almost all airline contracts and certain provisions of Federal law" meaningless.  Appellants' Br. at 34.

The first half of this lament — that a finding for the defendants will jeopardize the enforceability of all airline contracts of carriage — is empty rhetoric.  A finding for the defendants merely retains the configuration of the Wolens exception crafted by the Supreme Court, which limited that exception to "self-imposed undertakings."  Wolens, 513 U.S. at 228.  The second half of this lament — that a finding for the defendants will undercut the federal regulatory scheme — is equally baseless.  Refusing to treat federal regulations as implied contract terms does not in any way diminish the efficacy of the regulatory scheme itself.  Contrary to the plaintiffs' importunings, we do not think it "inexplicabl[e]" that Congress might view certain regulations as sufficiently important to warrant their promulgation, yet "not sufficiently important to permit [private] enforcement in any court."  Appellants' Br. at 35.

What the plaintiffs fail to grasp is that the unavailability of private enforcement is not the same as the unavailability of any enforcement at all.  We made that point in Bonano, 365 F.3d at 85, where we remarked upon the power of the Secretary of Transportation to conduct investigations and issue

orders with respect to the airline industry. This led us to the conclusion that Congress's preference in this area is for public, rather than private, enforcement. See id.; see also 49 U.S.C. § 46106. In other words, Congress reasonably expected the regulations to be enforced by the Secretary. See Statland, 998 F.2d at 542.

In a last-ditch effort to pull a rabbit out of the hat, the plaintiffs venture a pair of procedural arguments. First, they say that their suit should not have been dismissed prior to the discovery of additional contract terms. This ipse dixit misapprehends the mechanics of Rule 12(b)(6) which, as we have interpreted it, requires that plaintiffs "allege a factual predicate concrete enough to warrant further proceedings." United States ex rel. Karvelas v. Melrose-Wakefield Hosp., 360 F.3d 220, 240 (1st Cir. 2004) (internal quotation marks omitted); see Educadores Puertorriqueños en Acción v. Hernández, 367 F.3d 61, 68 (1st Cir. 2004) (explaining that, to survive a Rule 12(b)(6) motion, "the complaint should at least set forth minimal facts as to who did what to whom, when, where, and why"). In a contract action, this irreducible minimum requires the pleader to "explain what obligations were imposed on each of the parties by the alleged contract." Doyle v. Hasbro, Inc., 103 F.3d 186, 195 (1st Cir. 1996). The plaintiffs failed to achieve that benchmark here.

Absent a minimally sufficient complaint, they were not entitled to discovery.  See McCloskey, 446 F.3d at 271.

Second, the plaintiffs make a half-hearted argument that because some defendants annexed exhibits to their motions to dismiss, the district court should have converted the motions to motions for summary judgment.  See Fed. R. Civ. P. 12(b).  This argument is triply flawed.  For one thing, conversion is wholly discretionary with the district court.  See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998).  For another thing, none of the submitted materials bore upon the preemption issue, which is dispositive here.  Third, and finally, the plaintiffs' brief is devoid of any developed argumentation on this point.  Therefore, the issue is not properly before us.  See Martinez v. Colon, 54 F.3d 980, 990 (1st Cir. 1995); United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990).

## IV.  CONCLUSION

We need go no further.  For the reasons elucidated above, we uphold the district court's order of dismissal.

**Affirmed**.